AMERICAN BONDING CO., a
corporation, Plaintiff and
Appellant,

v.

Keith R. NELSON and AAA Electric Service, Keith R. Nelson, an individual and Maureen Nelson, an individual, Defendants and Respondent.

Keith R. NELSON, dba AAA Electric
Service, Plaintiff,

v.

FARMERS HOME MUTUAL INSURANCE CO. Defendant, Counterclaimant and Third–Party Plaintiff.

No. 880090–CA.

Court of Appeals of Utah.

Nov. 1, 1988.

A. Dennis Norton, Snow, Christensen & Martineau, Craig S. Cook (argued), Salt Lake City, for plaintiff and appellant.

John L. McCoy (argued), Salt Lake City, Keith R. Nelson, Murray, for defendant and respondent, Maureen Nelson.

Before DAVIDSON, BENCH and GREENWOOD, JJ.

OPINION

DAVIDSON, Judge:

Appellant seeks reversal of the trial court's order dismissing respondent from liability under a blanket indemnity agreement. We affirm.

In September 1973, defendant Keith R. Nelson was doing business as AAA Electric Service (AAA). At that time Keith was married to defendant and respondent Maureen Nelson. Keith was involved in work for the United States Government and was required to obtain surety bonds for his

contracts. In order to do this, Keith and Maureen executed a "Blanket Indemnity Agreement" with plaintiff and appellant American Bonding Company (American) on September 17, 1973. Keith, doing business as AAA, was listed as principal while both Keith and Maureen were identified as indemnitors. Based upon the agreement, American issued performance bonds for Keith's contract jobs.

■ Germane to this appeal are the following paragraphs of the indemnity agreement:

ELEVENTH: The Indemnitors hereby waive notice of the execution of said Bonds and of the acceptance of this Agreement, and the Principal and the Indemnitors hereby waive all notice of any default, or any other act or acts giving rise to any claim under said Bonds, as well as notice of any and all liability of the Surety under said Bonds, and any and all liability on their part hereunder, to the end and effect that, the Principal and the Indemnitors shall be and continue liable hereunder, notwithstanding any notice of any kind to which they might have been or be entitled, and notwithstanding any defenses they might have been entitled to make.

. . . .

THIRTEENTH: The Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon the Bonds, unless the Principal and the Indemnitors shall request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of the Surety.

Maureen testified she did not remember signing the indemnity agreement, but that she was in the habit of signing papers Keith brought to her. Maureen also testified that Keith and she were separated from July 1975 until their divorce in October 1976. During this period, Keith occasionally came to the family home to visit the children and pick up his mail.

On June 30, 1975, American, as one of two sureties, executed a performance bond in favor of the United States Government listing Keith doing business as AAA as the principal. In October 1975, American was notified of claims against the bond and discovered that AAA's contracts in Denver had been placed in default by the contracting officer. American's attorney spoke to Keith concerning the contract situation and later testified that Keith never offered to undertake the defense of the problem. The attorney further testified that individual letters were sent to Keith and Maureen on November 19, 1975, which notified them of claims against the bond. The letters, received into evidence at trial, indicated they were sent by certified mail with return receipt requested and also that a copy had been sent by regular mail. Additionally, Keith was sent a copy of the letter to Maureen and vice versa. Both the certified letters and the certified returns were returned to American stamped "unclaimed." American's files do not indicate that any of the letters sent by regular mail were returned to them.

On January 15, 1976, American and the other surety entered into a takeover agreement with Keith, in which the sureties agreed to complete the contracts and AAA assigned its rights and duties to the sureties. Subsequently, on August 14, 1979, American filed a complaint against defendants for all costs of enforcing the agreement.

Trial to the court was held on February 2 and 3, 1981. At the conclusion of American's case, the court granted a motion to dismiss Maureen. On July 8, 1985, a hearing was held to finalize the court's decision. The conclusion that Maureen should not be bound as an indemnitor is based on the following findings:

1. Timely notice of default was given to both Keith Nelson and Maureen Nelson as prescribed by the Agreement of In-

demnity (General) to which they were indemnitors.

2. Notice to Maureen Nelson was vague and insufficient and therefore did not afford reasonable notice to her so as to intelligently form any rational basis for deciding whether she should exercise her right under paragraph 13 of the Agreement of Indemnity (General) to defend or to prosecute any particular claims that AAA Electric might have had against the United States Government in order to avoid or reduce liability against her as an indemnitor.

. . . .

4. The record is silent as to efforts made by American Bonding Company and [the other surety] to ascertain how to keep Maureen Nelson informed or to ascertain what information, if any, she was receiving. The record is also silent as to any opportunity she was given to be a party to the take-over agreement, and Maureen Nelson was not a party to the take-over agreements, nor was it submitted to her for approval or was she advised of the terms thereof by American Bonding Company.

American contends the lower court erred in dismissing Maureen from liability under the agreement.

■ Implicit in the trial court's findings is an ambiguity between paragraphs 11 and 13 of the agreement. "Language is considered ambiguous if 'the words used to express the meaning and intention of the parties are insufficient in a sense that the contract may be understood to reach two or more plausible meanings.'" *Metropolitan Prop. & Liability Ins. Co. v. Finlayson,* 751 P.2d 254, 257 (Utah App.1988) (quoting *Central Sec. Mut. Ins. Co. v. DePinto,* 235 Kan. 331, 681 P.2d 15, 17 (1984)). This court must determine if the agreement is ambiguous as a matter of law. *Wilburn v. Interstate Elec.,* 748 P.2d 582, 584 (Utah App.1988). The two paragraphs demonstrate an ambiguity since paragraph 11 states all notice is waived whereas paragraph 13 gives the indemnitors the right to request American to litigate claims or demands against the bond. In order to exer-

cise those rights, the indemnitors must have notice. Therefore, while notice is waived by one paragraph it is a necessity in the other. The two paragraphs appear to be in irreconcilable conflict with each other and are, therefore, ambiguous.

With the determination of ambiguity, "our own court is committed to the rule that the contract of a surety, for hire, is to be strictly construed against the surety." *Dennis Dillon Oldsmobile, GMC, Inc. v. Zdunich,* 668 P.2d 557, 560 (Utah 1983) (quoting *J.F. Tolton Invest. Co. v. Maryland Cas. Co.,* 77 Utah 226, 230, 293 P. 611, 612 (1930)). The court continued:

The modern authorities seem to be almost a unit upon the proposition that a different rule of construction applies to different classes of sureties. In the case of a private or voluntary surety without compensation the surety is held to be a favorite of the law, and the contract, the performance of which he guarantees, is construed strictly in favor of the surety. *Strictissimi juris* is the term used to express the rule by which his liability shall be determined.

*In the case of a surety who makes insurance a business for compensation, the rule is exactly the reverse. Doubtful provisions of the contract, the performance of which the surety guarantees, are construed in favor of the insured.*

*Dennis Dillon,* 668 P.2d at 560–61 (emphasis added) (quoting *M.H. Walker Realty Co. v. American Surety Co.,* 60 Utah 435, 463–64, 211 P. 998, 1009–10 (1922)). *See also Shelter America Corp. v. Ohio Cas. and Ins. Co.,* 745 P.2d 843 (Utah App. 1987).

■ We conclude that paragraph 13 must be construed to require *adequate* notice to Maureen concerning the claims against the surety. Because of Maureen's lack of involvement in the affairs of AAA, the trial court found the notice to be substantially defective. Specifically, the oral findings record:

The Court would find that even though Maureen Nelson was an indemnitor in all respects by contract, as was her hus-

band, she was treated very differently than her husband, Keith Nelson, as an indemnitor. Keith Nelson was kept involved and informed of the efforts to resolve the problems and settlement of the construction and all related issues pertaining to the ILS and ALS contracts in question. He was informed on the terms of the takeover agreement and was signatory thereto. He and his attorney, James Kreutz, were advised of the final settlement terms with the Government, and Keith Nelson had knowledge of the underlying facts supporting his claim for offsets. He had reviewed them with counsel and he had the opportunity of settling or pursuing the claims independently if he saw fit.

On the other hand, the record is silent as to any efforts made by American Bonding and Farmers Home Mutual to ascertain how to keep Maureen Nelson informed or to ascertain what information, if any, she was receiving. There was no evidence that she was given any opportunity to be a party to the takeover agreement, and was not a party to the takeover agreement specifically. There is no evidence that the settlement agreement entered between the FAA and the sureties was presented to her for approval, and there is no evidence that she was advised of the terms thereof, as was Keith Nelson.

Findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Utah R.Civ.P. 52(a). We hold that the lower court's findings on this issue are not clearly erroneous.

The judgment of the trial court is affirmed. Costs against appellant.

GREENWOOD and BENCH, JJ., concur.