2020 UT App 54

## THE UTAH COURT OF APPEALS

IN RE EXCESS PROCEEDS FROM THE FORECLOSURE OF PROPERTY
LOCATED AT 1107 SNOWBERRY STREET, PARK CITY, UTAH

OCEAN 18 LLC; AND AMIR HECHTER,
Appellants,
*v.*
OVERAGE REFUND SPECIALISTS LLC; AND BRIAN DOWD,
Appellees.

Opinion
No. 20190257-CA
Filed April 2, 2020

Third District Court, Silver Summit Department
The Honorable Kent R. Holmberg
No. 180500253

Troy L. Booher, Beth E. Kennedy, and Kenyon D.
Dove, Attorneys for Appellants

R. Spencer MacDonald and Elizabeth M. Peck,
Attorneys for Appellees

JUDGE RYAN M. HARRIS authored this Opinion, in which JUDGES
KATE APPLEBY and DIANA HAGEN concurred.

HARRIS, Judge:

¶1 In 2006, a property owner (Owner) borrowed $500,000 from Instant Mortgage Lending, Inc. (IML); the loan was memorialized in a promissory note in favor of IML. The parties intended the loan to be secured by a deed of trust on Owner's home (the Property), but on the first page of the deed (Trust Deed), Instant Funding, L.L.C. (Instant Funding)—and not IML—was listed as the "Beneficiary," even though the Trust Deed later defined the term "Beneficiary" as the "owner and holder . . . of the note secured hereby."

¶2     Several years later, in 2018, the Property was sold, and after certain priority lienholders were paid, more than $273,000 of excess proceeds remain to be distributed. Appellants Ocean 18 LLC and Amir Hechter (collectively, Ocean 18) purport to be the successors-in-interest to IML, and claim an entitlement to those proceeds. Ocean 18's claim is contested by two other lower-priority claimants, who assert that—due to Instant Funding being listed as the beneficiary on the first page of the Trust Deed—IML never had any claim to the Property to begin with, and therefore could not have conveyed anything to Ocean 18. The district court, after considering briefing and holding oral argument, agreed with the lower-priority claimants. It determined as a matter of law that Instant Funding was the beneficiary of the Trust Deed, declared Ocean 18's claim invalid, and awarded the proceeds to the lower-priority claimants. Ocean 18 now appeals.

¶3     We conclude that the Trust Deed is ambiguous regarding the identity of its beneficiary, but determine that we can resolve at least some of that ambiguity on the record before us. As a matter of law and undisputed fact, Instant Funding was never intended to be the beneficiary of the Trust Deed and, further, at the time the deed was created the parties intended for IML to be the beneficiary. Beyond that, however, the record before us does not permit resolution of this case as a matter of law, and we therefore reverse and remand for further proceedings in order to, among other things, determine whether Ocean 18 is the valid successor-in-interest to the actual beneficiary of the Trust Deed.

## BACKGROUND

¶4     In early 2006, IML loaned $500,000 to Owner, who executed a promissory note (the Note) promising to repay the loan; the Note lists "Instant Mortgage Lending, Inc." as the lender and holder of the Note. In connection with the loan transaction, Owner also executed the Trust Deed, granting a security interest in the Property—a home located in the

Glenwild area near Park City, Utah—to an entity. On February 24, 2006, just a few days after its execution, the Trust Deed was duly recorded with the Summit County Recorder's Office. At issue in this case, among other things, is the identity of the entity to whom Owner granted this security interest.

¶5     In its first paragraph, the Trust Deed proclaims that Owner is granting the security interest to "Instant Funding, L.L.C., a Nevada limited liability company, as Beneficiary, whose mailing address is Instant Mortgage Lending, a California corporation, 5415 Oberlin Drive, San Diego, CA 92121." However, on its last page, in paragraph 16, the Trust Deed states that "[t]he term 'Beneficiary' shall mean the owner and holder, including any pledgee, of the note secured hereby."

¶6     The original Note indicates that its holder is "Instant Mortgage Lending, Inc." But the Note was amended on seven future occasions, beginning on August 28, 2006, and never again did the drafters indicate that the holder was "Instant Mortgage Lending, Inc." Instead, the holder is listed, variably, as "Instant Mortgage Lending," "Instant Mortgage Lending Corp.," and "Nationwide Servicing Center, Inc." It is undisputed that the "owner and holder" of the Note secured by the Trust Deed was never Instant Funding, and that Instant Funding was not the entity that loaned $500,000 to Owner. But the parties do not agree that the Note (and its seven amendments) makes clear who the "owner and holder" actually is.

¶7     Soon after the Trust Deed was recorded, interested parties recognized that it had not been drafted with precision. In late May 2006, the trustee recorded a document entitled "Notice of Correction of Beneficiary Address in Trust Deed." In that document, Instant Funding was again listed as beneficiary in the opening paragraph, but its mailing address was changed to eliminate all reference to "Instant Mortgage Lending, a California corporation." This time, the "correct mailing address for Beneficiary" was listed simply as "Instant Funding, LLC, 5415 Oberlin Drive, San Diego, CA 92121."

¶8 A little more than two months later, on August 3, 2006, the trustee recorded another document, this one entitled "Notice of Clerical Correction to Trust Deed to Conform with Record." In this document, the trustee purported to amend both the name and the mailing address of the beneficiary. The document proclaims that "[n]otice is hereby given of the correct name and mailing address for Beneficiary, Instant Mortgage Lending Corp., a California corporation, also known as Instant Mortgage Lending, Inc.," whose mailing address is "3830 Valley Centre Dr., Ste 705, Pmb 182, San Diego CA 92130." The document states that "[t]he incorrect reference in said Deed of Trust to Instant Funding, LLC, as Beneficiary . . . is hereby deleted and corrected by this Notice." The document was executed only by the trustee and not by Instant Funding; in fact, the record submitted to us on appeal does not contain any document signed by Instant Funding in which it purported to give up any interest it might have had in the original Trust Deed.

¶9 Several years later, in 2012, IML assigned its interest in the Note and Trust Deed to Ocean 18 and three other individuals; in 2013, the three individuals assigned their interest to Ocean 18 and Amir Hechter, who now purport to own all of IML's interest—whatever that interest might be—in the Note and Trust Deed.

¶10 In 2018, a priority lienholder foreclosed on the Property, which was then sold at a trustee's sale. After the priority lienholder was paid, the sale trustee deposited the excess proceeds—over $286,000—with the district court pursuant to Utah law, which allows a trustee the "discretion" to "deposit the balance of the proceeds with the clerk of the district court of the county in which the sale took place." *See* Utah Code Ann. § 57-1-29(1)(a)(iii)(B) (LexisNexis 2017).

¶11 Following deposit of the funds, the district court sent notice to all individuals and entities known to possess a possible interest in the excess proceeds. Five claimants submitted claims, two of which were relatively small and unquestionably had

priority. After payment of the two smaller claims, over $273,000 of proceeds remained, and three claimants sought the money:

- Ocean 18, claiming to be the successor-in-interest to IML, made a claim dating to 2006 in the amount of over $396,000.

- Brian Dowd, a judgment creditor of Owner dating to 2018, made a claim in the amount of $125,000.

- Overage Refund Specialists (Overage), successor-in-interest to Owner, made a claim for any proceeds left over once all of the other valid claims are paid.

If Ocean 18's claim is valid, its claim has priority over the other two remaining claims, and is of sufficient size to use up all of the remaining excess proceeds, leaving Dowd and Overage with nothing. On the other hand, if Ocean 18's claim is not valid, it will receive nothing, Dowd will be fully paid, and Overage will receive whatever remains, something on the order of $148,000. It thus became important for the district court to determine whether Ocean 18's claim is valid.

¶12     To that end, the district court invited the parties to submit briefs on, among other issues, the question of the validity of Ocean 18's claim. Dowd and Overage opposed Ocean 18's claim, asserting that Ocean 18's chain of title was "rife with inconsistencies," and pointing out that Instant Funding—and not IML, Ocean 18's predecessor-in-interest—was the listed beneficiary on the first page of the original Trust Deed. They further asserted that the inconsistencies could not have been corrected by the two post-transaction documents purporting to correct the record, because those documents were not signed by Instant Funding, and because the problem the documents were trying to fix was no mere "clerical" error. Dowd and Overage

also claimed that the later conveyances that purportedly passed IML's interest on to Ocean 18 were defective.

¶13    In response, Ocean 18 asserted that the mistake in setting forth the identity of the beneficiary on the Trust Deed had been a "minor scrivener error," and submitted a sworn declaration from its president—an individual who was formerly the president of IML, and who also once "originated loans with a group named Instant Funding, LLC"—who averred that Instant Funding was "mistakenly listed as the beneficiary" on the Trust Deed, and that this "identification was erroneous and was subsequently corrected" by the August 2006 recording of the "Notice of Clerical Correction." Other than this declaration, no party submitted any extrinsic evidence of what the parties to the Note and Trust Deed may have intended. And no party expressly claimed that the Trust Deed was ambiguous.

¶14    After full briefing, the district court heard oral argument from counsel. Although the record submitted to us does not contain a transcript of that hearing, the district court issued a four-page written ruling a few weeks later, and therein noted that, at the hearing, "counsel confirmed to the Court that they were submitting the issues regarding the priority of their respective claims on their written briefs and that an evidentiary hearing was unnecessary." And our review of the record also fails to turn up any request by any party for additional discovery, whether filed pursuant to rule 56(d) of the Utah Rules of Civil Procedure or in any other manner.

¶15    In the court's written decision, it ruled that IML had no interest in the Trust Deed, because the first page of that document listed Instant Funding—and not IML—as the beneficiary. Apparently persuaded by the conclusiveness of the declaration on the Deed's first page, the court stated that, "in the absence of a valid conveyance or assignment of interest from [Instant Funding] to Instant Mortgage Lending, Inc./Instant Mortgage Lending Corp., [Instant Funding] remained the beneficiary under the" Trust Deed. The court concluded that the

August 2006 "correction" did not change the situation, because misidentification of a beneficiary is not a clerical or scrivener's error that can be addressed without a document signed by Instant Funding. In summary, the court ruled that IML "simply had no interest to convey" to Ocean 18 in the subsequent transactions. The court did not consider whether the Trust Deed was ambiguous, and (given the nature of its ruling) did not examine the validity of the 2012 and 2013 conveyances.

¶16　After making its ruling, the district court issued an order and judgment distributing $125,000 of the excess proceeds to Dowd, over $148,000 to Overage, and nothing to Ocean 18. The district court later stayed enforcement of that judgment, pending the outcome of this appeal.

ISSUE AND STANDARD OF REVIEW

¶17　Ocean 18 appeals from the district court's judgment, and asserts that the court erred in concluding, as a matter of law, that it had no interest in the Trust Deed.[1] Both parties assert that the

---

1. Overage and Dowd contend that Ocean 18 has failed to preserve its challenge for appellate review, asserting that Ocean 18 never asked the district court to "look to the language of the [Trust D]eed as a whole" or to construe the Trust Deed "to give effect to the intent of the parties." Overage and Dowd misunderstand the scope of an appellant's preservation obligation. Our preservation jurisprudence draws a distinction between "issues" (which must be preserved) and "arguments" (which consist merely of authority in support of a party's position on an issue, and do not need to be specifically made at the trial level in order to be included in a brief on appeal). *See Gressman v. State*, 2013 UT 63, ¶ 45, 323 P.3d 998 ("*Issues* must be preserved, not arguments for or against a particular ruling on an issue raised below."). The issues preserved for appeal include both whether IML was the beneficiary of the Trust Deed and, if

(continued…)

question presented is a mixed question of law and fact, in which case we would review the district court's factual findings for clear error and its legal determinations for correctness. But the district court did not purport to make any factual findings; indeed, the court decided this matter after considering only briefing and oral argument, without taking evidence. In essence, although neither the parties nor the court framed it this way, the court made a summary judgment ruling in which it determined, as a matter of law and undisputed fact, that Ocean 18 had no interest in the Trust Deed. It is of course well-settled that we review a district court's summary judgment rulings for correctness, *see Zundel v. Magana*, 2015 UT App 69, ¶ 4, 347 P.3d 444, and we apply that standard of review to the district court's ruling in this case.

## ANALYSIS

¶18    After briefing and argument, but without the benefit of an evidentiary hearing, the district court issued an order reaching two important conclusions. First, the court determined that Instant Funding was the beneficiary of the 2006 Trust Deed. Second, based on its first conclusion, the court then determined that IML "had no interest [in the Trust Deed] to convey," and that therefore Ocean 18—as purported successor-in-interest to IML—had no interest in the Trust Deed either. Ocean 18 challenges both of those conclusions, and not only asks this court to reverse them but also asks us to determine that it should

_____

(…continued)

so, whether Ocean 18 succeeded to IML's interest under the Trust Deed. On appeal, Ocean 18 is entitled to make new arguments, and cite new authorities, in support of the issues it raised below, even if it did not cite those authorities at the district court level. We have no trouble concluding that the issues presented in Ocean 18's appeal were properly preserved for our review.

prevail as a matter of law. We are not willing to go as far, at this point and on this record, as Ocean 18 asks us to. But we agree with Ocean 18 that the district court's first conclusion was infirm, and we conclude that questions of fact preclude entry of judgment, at least on the record before us, in either party's favor on the second issue.

¶19 We begin our analysis by setting forth applicable principles of contractual interpretation that guide our analysis. We then analyze the first issue—whether the district court correctly determined that Instant Funding was the beneficiary of the Trust Deed—and conclude that the district court erred, and that actually, as a matter of law, Instant Funding was *not* the beneficiary of the Trust Deed. After that, we address the second question, and determine, as a matter of law, that—at least at the time the Trust Deed was executed—the parties intended for IML to be the beneficiary. However, the record before us does not permit us to conclusively determine, as a matter of law, whether IML validly conveyed any interest to Ocean 18. Accordingly, we must remand for further proceedings.

A

¶20 At their most basic level, deeds are simply a particular type of contract between parties. Indeed, Utah appellate courts have long made clear that "deeds are to be construed like other written instruments," *see Keith v. Mountain Resorts Dev. LLC*, 2014 UT 32, ¶ 21, 337 P.3d 213 (quotation simplified), "according to ordinary rules of contract construction," *Panos v. Olsen & Assocs. Constr., Inc.*, 2005 UT App 446, ¶ 15, 123 P.3d 816 (quotation simplified); *Keith*, 2014 UT 32, ¶ 21 ("Courts interpreting a deed should employ all appropriate tools of construction to arrive at the best interpretation of its language." (quotation simplified)). Therefore, we must construe the Trust Deed according to generally applicable rules of contractual interpretation.

¶21 Under those rules, the "overriding principle" is that the "intentions of the parties are controlling." *See Layton City v.*

*Stevenson*, 2014 UT 37, ¶ 21, 337 P.3d 242 (quotation simplified); *see also Mind & Motion Utah Invs., LLC v. Celtic Bank Corp.*, 2016 UT 6, ¶ 24, 367 P.3d 994 ("When interpreting a contract, our task is to ascertain the parties' intent."); *Morris v. Off-Piste Capital LLC*, 2018 UT App 7, ¶ 21, 418 P.3d 66 (stating that, when interpreting an assignment of a deed, "courts endeavor to carry out the grantor's intention whenever it is possible" (quotation simplified)). And in attempting to ascertain the intent of the contracting parties, the appropriate place to begin is with the language the parties agreed to use. *See Central Fla. Invs., Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 12, 40 P.3d 599 ("We first look to the plain language within the four corners of the agreement to determine the intentions of the parties."); *see also Mind & Motion*, 2016 UT 6, ¶ 24 (stating that "the best indication of the parties' intent is the ordinary meaning of the contract's terms"). In evaluating the language of a contract or deed, courts examine the instrument in its entirety, considering "each contract provision in relation to all of the others, with a view toward giving effect to all and ignoring none." *See Café Rio, Inc. v. Larkin-Gifford-Overton, LLC*, 2009 UT 27, ¶ 25, 207 P.3d 1235 (quotation simplified); *see also Hartman v. Potter*, 596 P.2d 653, 656 (Utah 1979) (stating that "the cardinal rule of deed construction" is that "the intention of the parties as drawn from the whole deed must govern"). Before concluding that a contract is ambiguous, a court must first attempt to "harmoniz[e] conflicting or apparently ambiguous contract language," an exercise in which "we examine the entire contract and all of its parts in relation to each other and give a reasonable construction of the contract as a whole to determine the parties' intent." *Gillmor v. Macey*, 2005 UT App 351, ¶ 19, 121 P.3d 57 (quotation simplified).

¶22 In many cases, we need look no further than the plain language of the contract, because that language may unambiguously tell us what the parties intended. Indeed, where the language used in the contract is "facial[ly]" unambiguous, *see Daines v. Vincent*, 2008 UT 51, ¶¶ 25–26, 190 P.3d 1269, "the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a

matter of law," without resort to parol evidence, *see Café Rio*, 2009 UT 27, ¶ 25 (quotation simplified). But in other instances— those in which the contractual language is facially ambiguous—a court will not be able to tell, simply from an examination of the contract's plain language, what the parties intended. In those situations, "parol evidence of the parties' intentions should be admitted." *See Daines*, 2008 UT 51, ¶ 25; *see also Central Fla. Invs.*, 2002 UT 3, ¶ 12 ("If the language within the four corners of the contract is ambiguous, . . . extrinsic evidence must be looked to in order to determine the intentions of the parties.").

¶23    Thus, one of the first questions a court must consider in interpreting a contract is whether the contract is ambiguous. Under Utah law, whether a contract is (or is not) ambiguous is "a question of law to be determined by the judge." *Daines*, 2008 UT 51, ¶ 25; *see also WebBank v. American Gen. Annuity Service Corp.*, 2002 UT 88, ¶ 22, 54 P.3d 1139 ("Whether an ambiguity exists in a contract is a question of law." (quotation simplified)). "A contract is facially ambiguous if its terms are capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." *Mind & Motion*, 2016 UT 6, ¶ 24 (quotation simplified). A "reasonable interpretation" is one "that cannot be ruled out, after considering the natural meaning of the words in the contract provision in context of the contract as a whole, as one the parties could have reasonably intended." *See Brady v. Park*, 2019 UT 16, ¶ 55, 445 P.3d 395. Crucially, ambiguity is present only if *both* proffered interpretations of the contract's language are "tenable" and in keeping with the contract's language. *See R & R Energies v. Mother Earth Indus.*, 936 P.2d 1068, 1074 (Utah 1997) (stating that a contract is "not necessarily ambiguous just because one party gives [a] provision a different meaning than another party does," but instead, "the contrary positions of the parties must each be tenable" (quotation simplified)); *see also Brady*, 2019 UT 16, ¶ 55 (stating that if "either of the competing interpretations could reasonably have been what the parties intended when they entered into the contract, then the contract is ambiguous"). A contract containing terms that are "in

irreconcilable conflict" and cannot be harmonized is ambiguous. *See American Bonding Co. v. Nelson*, 763 P.2d 814, 816 (Utah Ct. App. 1988).

B

¶24    With those background principles in mind, we proceed to examine the language of the Trust Deed. The parties advance differing positions as to the Trust Deed's clarity. Before the district court, although both sides advocated for diametrically opposed interpretations of the Trust Deed and associated documents, neither side expressly argued that the recorded documents, including the Trust Deed, were ambiguous. On appeal, neither side uses any variant of the word "ambiguous" in their briefs, though Dowd and Overage argue that "the intent of the parties is anything but clear" in the recorded documents, which they describe as "exceedingly confusing." Ocean 18, on the other hand, continues to maintain that the recorded documents at issue in this case are models of "clarity," are "not confusing," and clearly indicate an intent to make IML the beneficiary of the Trust Deed.

¶25    Parties do not need to use the word "ambiguous" in order for a court to determine that a document is indeed ambiguous. *See, e.g.*, *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 298 P.3d 250, 265 (Kan. 2013) (stating that "the parties' agreement or lack of agreement on the existence of ambiguity does not compel the court to arrive at the same conclusion"); *North Central Oil Corp. v. Louisiana Land & Expl. Co.*, 22 S.W.3d 572, 575 (Tex. App. 2000) ("A court may conclude that a contract is ambiguous even in the absence of such a pleading by either party."). If both sides advance interpretations of the Trust Deed that are plausible and reasonably supported by the document's language, then the document is ambiguous, even if neither party actually uses that label to describe the document. Indeed, that is the very definition of contractual ambiguity. *See Mind & Motion*, 2016 UT 6, ¶ 24 ("A contract is facially ambiguous if its terms are capable of more than one reasonable interpretation . . . ." (quotation simplified)).

In our view, both sides espouse interpretations of the Trust Deed that are plausible and reasonably supported by its language, and we therefore conclude that the Trust Deed is ambiguous.

¶26   Dowd and Overage advance an interpretation that relies heavily on the first paragraph of the Trust Deed, which proclaims that Instant Funding (and not IML) is the beneficiary. Dowd and Overage contend that this paragraph is controlling, and that we need look no further in ascertaining the parties' intentions regarding the identity of the beneficiary. We acknowledge that language used in the first paragraph of the Trust Deed strongly supports Dowd's and Overage's position; indeed, if there were no contrary provisions, we would be inclined to agree with their interpretation.

¶27   But there are contrary provisions, and we must examine the Trust Deed as a whole. *See Hartman*, 596 P.2d at 656 (explaining "the cardinal rule of deed construction that the intention of the parties as drawn from the whole deed must govern" (quotation simplified)). Indeed, another provision of the Trust Deed—paragraph 16, a provision upon which Ocean 18 heavily relies—states that the "term 'Beneficiary' shall mean the owner and holder of the [N]ote secured hereby."[2] A separate

---

2. Regardless of whether the Note is considered part of the Trust Deed, or extrinsic evidence of the intent of the drafters of the Trust Deed, we may consider the language of the Note in the process of evaluating whether the Trust Deed is ambiguous. The Trust Deed repeatedly and expressly refers to the Note. Indeed, the Trust Deed proclaims that its purpose is to "secur[e] . . . the payment of indebtedness evidenced by" the Note; specifies that "Beneficiary is relying upon this Trust Deed as an inducement to make the subject loan" to Owner, "and that absent the grant of a security interest in the Property in favor of Beneficiary pursuant to this Trust Deed . . . Beneficiary would not have made the subject loan" to Owner; and expressly ties the definition of

(continued…)

provision of the Trust Deed similarly relies upon the Note, emphasizing that the beneficiary of the Trust Deed "is relying upon this Trust Deed as an inducement to make the subject loan" to Owner, "and that absent the grant of a security interest in the Property in favor of Beneficiary pursuant to this Trust Deed that Beneficiary would not have made the subject loan" to Owner. And the Note does not—in any of its iterations or amendments—make any mention of Instant Funding as its owner or holder.

¶28    In our view, the language of the Trust Deed is ambiguous with regard to the identity of the beneficiary. We certainly appreciate the position taken by Dowd and Overage—and adopted by the district court—that the Trust Deed's first paragraph should control, and that paragraph clearly announces

---

(…continued)

"Beneficiary" to the Note, indicating that the beneficiary under the Trust Deed is the "owner and holder" of the Note. "Parties may incorporate the terms of another document by reference into their contract," *see Northgate Village Dev., LC v. Orem City*, 2014 UT App 86, ¶ 26, 325 P.3d 123 (quotation simplified), and the parties to the transaction at issue here appear to have incorporated the Note into the Trust Deed such that we may consider the language of the Note in determining whether the Trust Deed is ambiguous. Alternatively, Utah appellate courts have made clear that, even in the process of considering whether a document is ambiguous, extrinsic evidence may be considered, so long as the evidence advances an interpretation of the text that is "reasonably supported by the language of the contract." *See Daines v. Vincent*, 2008 UT 51, ¶ 30, 190 P.3d 1269 (quotation simplified). In our view, Ocean 18's interpretation is reasonably supported by language in the Trust Deed that expressly refers to the Note, and therefore we may examine the language of the Note in connection with our examination of the Trust Deed's potential ambiguity.

that Instant Funding is the beneficiary of the Trust Deed. But we must review the documents in their entirety and construe them as a whole, and there are other provisions that point in the other direction, including the provisions that refer to the Note. Instant Funding was clearly not the entity that lent Owner $500,000 pursuant to the Note, and is therefore clearly not the entity referred to in paragraph 16 of the Trust Deed, which defines "Beneficiary" by reference to the Note. When we view the Trust Deed in its entirety, some of its terms are "in irreconcilable conflict" and cannot be harmonized through examination of the text alone. *See American Bonding Co.*, 763 P.2d at 816. Thus, we can come to no other conclusion but that the text of the Trust Deed is facially ambiguous as to the identity of its beneficiary.

C

¶29   If a court determines, as a legal matter, that a contract is facially ambiguous, then a question of fact exists as to the parties' intentions. *See Daines v. Vincent*, 2008 UT 51, ¶ 25, 190 P.3d 1269; *see also WebBank v. American Gen. Annuity Service Corp.*, 2002 UT 88, ¶ 22, 54 P.3d 1139 ("When ambiguity exists, the intent of the parties becomes a question of fact." (quotation simplified)). As noted, at this stage of the proceedings, "parol evidence of the parties' intentions should be admitted." *Daines*, 2008 UT 51, ¶ 25 (quotation simplified). As with any question of fact, the resolution of the question of the parties' intentions regarding an ambiguous contract is usually reserved for the factfinder after trial. *See Brady*, 2019 UT 16, ¶ 53 n.37 ("When ambiguity does exist, the intent of the parties is a question of fact to be determined by the jury." (quotation simplified)). But even questions of fact may be decided as a matter of law at the summary judgment stage, so long as the parol evidence submitted by the parties is so one-sided that a reasonable factfinder could reach but one conclusion. *See Cross v. Olsen*, 2013 UT App 135, ¶ 29, 303 P.3d 1030 ("Summary judgment is appropriate on . . . factual questions when they fall on either end of a factual continuum: when there could be no reasonable difference of opinion, or when the facts are so tenuous, vague, or

insufficiently established that determining the factual issue becomes completely speculative." (quotation simplified)); *see also Northgate Village Dev., LC v. Orem City*, 2014 UT App 86, ¶ 35, 325 P.3d 123 (stating that, "when facial ambiguity exists and the competing interpretations both enjoy evidentiary support, the parties' intent becomes a question of fact to be determined by the jury" (quotation simplified)).

¶30   We next proceed to examine the extrinsic evidence regarding the identity of the beneficiary under the Trust Deed. We first determine that the extrinsic evidence is clear and one-sided enough to allow us to conclude, as a matter of law, that Instant Funding was *not* the beneficiary under the Trust Deed. We next determine that the extrinsic evidence is clear enough to allow us to also conclude, as a matter of law, that the beneficiary under the Trust Deed—at least at the time the Trust Deed was executed—was IML. However, the record before us does not allow us to make further determinations as a matter of law on other questions pertinent to this case, including whether IML remained the beneficiary in light of the various amendments to the Note, and whether the 2012 and 2013 conveyances of IML's interest in the Trust Deed to Ocean 18 were valid.

1

¶31   The universe of extrinsic evidence submitted in this case is not extensive. Although the parties submitted briefs to the district court on the question of the identity of the beneficiary under the Trust Deed, the record before us does not indicate that the parties conducted any discovery at all on the question. No party noticed or took any depositions, and the record is unclear as to whether any written discovery requests were exchanged. The parties appear to have relied heavily on the available documents, including the Note (and its amendments), the Trust Deed, and the correction documents filed in 2006. Indeed, at oral argument before the district court, the parties each apparently turned down the opportunity to present evidence to the court,

and no party suggested to the court that it should hold off on deciding the matter until further discovery could be had.

¶32 In connection with the briefing submitted to the district court, the parties identified only two items that clearly fall into the category of extrinsic evidence.[3] First, Ocean 18 asked the court to take into account the parties' course of dealing, including their actions before and after IML's loan to Owner; specifically, Ocean 18 points out that it is undisputed that IML, and not Instant Funding, loaned $500,000 to Owner, and posits that IML would not have done that if the parties had not intended for IML to be the beneficiary under the Trust Deed. Conversely, Ocean 18 notes that, on this record, there is no evidence that Instant Funding ever loaned Owner any money, and a determination that Instant Funding is the beneficiary of the Trust Deed would grant Instant Funding a windfall for doing, it seems, nothing at all. That outcome makes little sense, and we agree with Ocean 18's assertion that the parties' course of dealing strongly indicates that Instant Funding was not the intended beneficiary.

¶33 Second, Ocean 18 submitted a sworn declaration filed by its president—an individual who was formerly the president of IML, and who also once "originated loans with a group named Instant Funding, LLC"—in which he avers that Instant Funding was "mistakenly listed as the beneficiary" on the Trust Deed, and states that this "identification was erroneous and was subsequently corrected" by the August 2006 recording of the "Notice of Clerical Correction." This declaration stands

---

3. Additional useful extrinsic evidence may not exist, given the passage of time since the documents were executed. Indeed, at oral argument on appeal, the court asked counsel for Overage to provide examples of where—or how—Dowd and Overage might look for additional extrinsic evidence that could be used to supplement the record and bolster their position, and counsel was unable to identify additional potential sources of evidence.

undisputed, on this record; no other individual involved in the drafting of the documents has come forward to contradict the declaration submitted by Ocean 18.

¶34     When we examine this body of extrinsic evidence, it leads to but one conclusion: that the drafters of the Trust Deed made a mistake when they indicated, on the document's first line, that Instant Funding was to be the beneficiary under the Trust Deed. The only party involved in drafting the documents that has been heard from on the matter has averred that this is indeed what happened—that a mistake was made in drafting the Trust Deed, and that the drafters' original intent was for IML, and not Instant Funding, to be the beneficiary. This testimony squares with the undisputed course of dealing between IML and Owner: that soon after execution of the Note and Trust Deed, IML—and not Instant Funding—loaned Owner $500,000. Indeed, the entire structure of the transaction appears aimed at securing IML's loan to Owner.

¶35     Dowd and Overage correctly point out that the May 2006 correction document sits on the other side of the evidentiary ledger. In that document, executed just three months after the Trust Deed, the trustee again indicated that Instant Funding (albeit this time with a different mailing address) was the beneficiary under the Trust Deed. But the problem with relying on the May 2006 correction document in this manner is that the trustee soon corrected the correction. In early August 2006, the trustee filed a second correction document, this time clarifying that Instant Funding was not the beneficiary under the Trust Deed, and that "Instant Mortgage Lending Corp." was the "correct name" of the beneficiary. And, as noted above, the only sworn testimony in the record about the meaning of these documents is that the August 2006 document correctly reflects

the intentions of the drafters regarding the identity of the Trust Deed's beneficiary.[4]

¶36    In sum, the available extrinsic evidence on the issue of whether Instant Funding was ever intended to be the beneficiary under the Trust Deed points strongly in one direction: Instant Funding was *not* intended to be the beneficiary. Indeed, in our view, the evidence points so strongly in that direction that we can conclude, as a matter of law, that Instant Funding was not the beneficiary of the Trust Deed.

---

4. Ocean 18 wisely does not argue that the August 2006 notice cured the problem; instead, on appeal, it asserts merely that examination of this document can help "confirm[]" the intent of the parties to the original Trust Deed. Indeed, in our view, the district court was correct to conclude that listing a different but existing company as the beneficiary of a trust deed (as opposed to, say, misspelling the beneficiary's name, or using a shorthand term to refer to it, *see, e.g.*, *Morris v. Off-Piste Capital LLC*, 2018 UT App 7, ¶ 25, 418 P.3d 66) is no mere scrivener's error that can be corrected by the "recording of an affidavit or other appropriate instrument" not signed by the misidentified party. *See* Utah Code Ann. § 57-3-106(9) (LexisNexis 2019) (allowing for "minor typographical or clerical errors in a document of record [to] be corrected by the recording of an affidavit or other appropriate instrument"); *see also Pioneer Builders Co. of Nev. v. KDA Corp.*, 2012 UT 74, ¶ 58, 292 P.3d 672 (noting that "courts in other jurisdictions have concluded that significant changes to deeds— such as the improper characterization of a grantee," were not "minor typographical or clerical errors"). Had the Trust Deed not been ambiguous on the question of the identity of the beneficiary, it may not have been proper for us to consider the August 2006 document at all. But because the original Trust Deed was ambiguous, we can use the August 2006 document to clarify the ambiguity in the Trust Deed. We therefore view the 2006 document as evidence of the parties' original intent, rather than as a document that somehow cured the problem altogether.

2

¶37    For similar reasons, that same limited body of extrinsic evidence is also clear enough to allow us to determine, as a matter of law, that—at least at the time the Trust Deed was executed—IML was the intended beneficiary of the Trust Deed. As noted, IML was the entity that loaned $500,000 to Owner, and the undisputed intent of the transaction was for the Trust Deed to secure the loan made to Owner. This intent is confirmed by the language of the Trust Deed, including paragraph 16, as well as by the parties' course of dealing and by the sworn declaration submitted by Ocean 18.

3

¶38    But that limited body of extrinsic evidence is not sufficient to allow us to answer other questions pertinent to the outcome of this case, including these: (1) did IML remain the holder of the Note, and therefore remain the beneficiary referred to in paragraph 16 of the Trust Deed?; and (2) if so, did IML properly transfer its interest in the Trust Deed to Ocean 18, via the 2012 and 2013 transactions?

¶39    With regard to the first question, the Note was amended seven times, starting on August 28, 2006, about three weeks after the second correction document was recorded. As discussed above, the original Note listed "Instant Mortgage Lending, Inc." as the lender and holder of the Note. But never again, in any of the seven amendments, was "Instant Mortgage Lending, Inc." listed as the holder of the Note; instead, the holder is listed, variably, as "Instant Mortgage Lending," "Instant Mortgage Lending Corp.," and "Nationwide Servicing Center, Inc." And the record submitted to us contains no extrinsic evidence about why these amendments were made, what the relationship is between these entities, or what the intent (if any) was behind the various amendments. We know nothing about the parties' course of dealing that would explain these amendments, and the Ocean 18 declaration does not discuss them.

¶40 As noted, the Trust Deed itself, in paragraph 16, identifies its beneficiary as the "owner and holder" of the Note. From the available extrinsic evidence, we know that the holder of the Note, at the time of its issuance, was IML. But there is evidence that IML may not have remained the holder of the Note, and may not have been the holder of the Note in 2012 and 2013 at the time it purported to convey its interest in the Trust Deed to Ocean 18. Because the district court determined that IML did not have any interest in the Trust Deed to begin with, it did not reach the question of whether IML retained its interest following the seven amendments to the Note. We simply have no information to assist us in resolving this ambiguity posed by the Trust Deed's reference to the Note.

¶41 Similarly, given the nature of its ruling, the district court had no occasion to reach the question of whether the 2012 and 2013 conveyances were valid. Dowd and Overage raise several potential issues with the validity of those conveyances, and those issues have never been addressed.

¶42 Further proceedings, including possibly discovery (if any can be had), on these issues is warranted, given that we cannot resolve them as a matter of law on the record before us.

CONCLUSION

¶43 The language of the Trust Deed is ambiguous regarding the identity of the beneficiary; the document's first page (listing Instant Funding as beneficiary) contradicts language elsewhere in the document, including paragraph 16, where the drafters indicate an intent that the beneficiary be the owner and holder of the Note, and it is undisputed that Instant Funding was never the owner and holder of the Note. Given the universe of extrinsic evidence submitted to us, we are able to resolve two elements of the ambiguity as a matter of law: Instant Funding was *not* the beneficiary under the Trust Deed, because—at least at the time it was executed—the beneficiary was IML.

¶44 But we are not able to resolve, as a matter of law, additional questions pertinent to this case on the record before us, including whether IML remained the beneficiary of the Trust Deed following the various amendments to the Note and, relatedly, whether the 2012 and 2013 conveyances properly transferred a meaningful interest in the Trust Deed to Ocean 18. Accordingly, we reverse the district court's order determining that Instant Funding was the beneficiary under the Trust Deed and awarding the excess proceeds to Dowd and Overage, and we remand for further proceedings consistent with this opinion.

_____