**2024 UT App 88**

# THE UTAH COURT OF APPEALS

KERRY ZUNDEL AND DEBRA ZUNDEL,
Appellants,
*v.*
KARLEEN RAMSDELL, DENISE MCMURDIE, JERIANN STEVENSON,
AND BEAR RIVER CANAL COMPANY,
Appellees.

Opinion
No. 20230043-CA
Filed June 21, 2024

First District Court, Brigham City Department
The Honorable Spencer D. Walsh
No. 190100018

Troy L. Booher, Taylor P. Webb, and Michael N.
Zundel, Attorneys for Appellants

Whitney Hulet Krogue, Carol A. Funk, Christopher
A. Beins, and Gregory W. Marsh, Attorneys for
Appellees Karleen Ramsdell, Denise McMurdie, and
Jeriann Stevenson

Emily E. Lewis and Nathaniel E. Broadhurst,
Attorneys for Appellee Bear River Canal Company

Peter Gessel and Warren Peterson, Attorneys for
Amicus Curiae Utah Farm Bureau Federation

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and RYAN D. TENNEY concurred.

OLIVER, Judge:

¶1 Nearly eight years after purchasing property from Robert
Brough, Kerry and Debra Zundel sought judgment quieting title
to Brough's shares of stock in the Bear River Canal Company

(Bear River)—a nonprofit mutual irrigation corporation.[1] Following the jury's verdict that the Bear River shares were not included in the property sale, the Zundels filed a post-trial motion for judgment as a matter of law, which the district court denied. On appeal, the Zundels argue the court should have granted their motion. We disagree and affirm.

BACKGROUND

¶2 Robert[2] owned seventeen acres of farmland (the Property) in unincorporated Box Elder County through his trust, the Robert Max Brough Revocable Trust (the Trust). The Property was irrigated through Robert's 15.87 shares of Bear River stock. On June 6, 2007, Robert, through the Trust, conveyed the Property to Brough Properties, LLC (Brough Properties), the membership of which included Robert's son, Curtis, and grandson, Ben. Brough Properties intended to develop the Property into a residential subdivision, and the real estate purchase agreement between the parties established a plan under which Brough Properties would make incremental payments to the Trust for the purchase of the Property to generate income for Robert.

¶3 This purchase agreement did not mention water rights or Robert's Bear River shares. The warranty deed conveying the Property from the Trust to Brough Properties (the First Deed) did

---

1. Nonprofit mutual irrigation corporations distribute water to "shareholders who already own the right to use that water" and allow them to pool their rights in the corporation "for convenience of operation and more efficient distribution, and perhaps for more convenient transfer." *Salt Lake City Corp. v. Cahoon & Maxfield Irrigation Co.*, 879 P.2d 248, 251–52 (Utah 1994) (cleaned up).

2. Because several of the parties involved here share the same surnames, we refer to them by their given names, with no disrespect intended by the apparent informality.

not mention water either. Brough Properties' plan was to incorporate the subdivision into Tremonton City, thus allowing use of the municipal water infrastructure. But Ben later testified that just hours after executing the First Deed, Robert suggested that a portion of the subdivision include a park, which would be irrigated through his Bear River shares. The parties also realized the First Deed incorrectly named "Brough Properties" instead of "Brough Properties, LLC." So, to get their "ducks in a row" and to correct the verbiage of the First Deed, Brough Properties conveyed the Property back to the Trust. In this second deed (the Second Deed), Brough Properties purported to convey the Property back to the Trust, "[t]ogether with all water rights appurtenant thereto, if any"—though the First Deed had not conveyed any water rights to Brough Properties. Ben later testified this was language the title company had inserted into the Second Deed.

¶4      On June 15, 2007, the Trust again conveyed the Property to Brough Properties in a third deed (the Third Deed), which also included the language "[t]ogether with all water rights appurtenant thereto, if any." But Robert did not transfer his Bear River shares to Brough Properties. Instead, nearly six months later, in November 2007, Robert transferred his Bear River shares to the Trust.

¶5      In 2011, after it became economically unfeasible to develop the Property, Brough Properties sold it to the Zundels, also "together with all water rights appurtenant thereto, if any," though Curtis acknowledged that Brough Properties did not own any shares at the time of the sale.[3] Though there was nothing said "specifically" about water prior to the sale, the Zundels expected their purchase of the Property to include water shares. But Robert refused to discuss transferring his shares to the Zundels.

_____

3. Brough Properties conveyed one parcel to Debra and Kerry jointly and two parcels to Kerry alone. For ease, we refer to the parcels together as "the Property."

Eventually Curtis promised to transfer the shares to the Zundels after Robert's death, believing he would be able to do so as successor trustee of the Trust. But unbeknownst to Curtis, Robert had amended the Trust, removing Curtis as successor trustee and naming his three daughters—Karleen Ramsdell, Denise McMurdie, and Jeriann Stevenson (the Daughters)—as successor co-trustees.

¶6     Eventually, Robert transferred his Bear River shares from the Trust to the Daughters. Robert had instructed the Daughters not to give any of the Bear River shares to the Zundels, so after his death, the Daughters decided to put the Bear River shares into a lease pool, as they did not have farmland to irrigate with the shares. The Zundels never contacted Bear River about the shares or paid any assessment for use of water on the Property. But after hearing the shares were entering the lease pool, the Zundels filed a complaint against the Daughters seeking judgment quieting title to the shares.[4]

¶7     The Daughters answered[5] and filed a motion for summary judgment, arguing, among other things, that the Zundels' quiet title claim failed as a matter of law because the Zundels could not show that the Bear River shares were appurtenant to the Property or that Robert intended to transfer the shares with the Property. The Zundels then filed a cross-motion for summary judgment, contending they could show that the water rights were appurtenant and that Robert intended them to transfer with the Property. In its memorandum decision on the cross-motions, the district court denied summary judgment to both parties, concluding there were genuine disputes of material facts

---

4. The Zundels also asserted claims for conversion and slander of title, which are not relevant for purposes of this appeal.

5. In their answer, the Daughters asserted several cross-claims against Brough Properties and Curtis and Ben as its members, but these claims are not relevant to this appeal either.

regarding both the appurtenance of the Bear River shares and Robert's intent to transfer them.

¶8      After the close of discovery, the Zundels filed another motion for summary judgment on their quiet title claim, arguing the Bear River shares were appurtenant to the Property and the issue of Robert's intent to transfer the shares was resolved by the unambiguous language of the Third Deed. The Daughters filed a cross-motion for summary judgment, arguing they were entitled to judgment on the Zundels' quiet title claim because the shares were not appurtenant to the Property as a matter of law and there was no evidence that Robert intended to transfer them to Brough Properties or to the Zundels. The court again denied both parties summary judgment, concluding genuine disputes of material facts still remained as to both appurtenance and intent.

¶9      At trial, the Zundels presented several witnesses. Their first witness—a real estate appraiser specializing in farm and ranch property—testified that in the real estate professional community, the terms "water rights" and "water shares" were used interchangeably. Ben testified that he, Curtis, and Robert had "not given [water rights] a lot of thought" when they executed the First Deed, but he also testified that the parties intended the conveyance to include Robert's Bear River shares. And he testified he had purchased other property from Robert that did not include a transfer of any shares. Curtis testified that Robert's only water rights were represented by his Bear River shares, and though Brough Properties did not actually own any shares, Brough Properties believed they obtained ownership of the shares through the Third Deed and could transfer them to the Zundels.

¶10     Kerry testified that, though he and Debra bought the Property from Brough Properties in 2011, his negotiations had been with Robert. He testified that Robert had said nothing "specifically" about water rights but later stated, "[Robert] knew I was buying the irrigated ground." Kerry also testified that Curtis told him to stop discussing the Bear River shares with Robert, as

it upset him. Denise testified that Robert had amended the Trust to remove Curtis as a successor trustee sometime after Brough Properties sold the Property to the Zundels because Brough Properties had never paid Robert any money for the conveyance of the Property. Denise also read a portion of the Trust declaration in which Robert listed his Bear River shares under their own heading as "Water Stock," separate from both his real property and tangible personal property.

¶11 The Daughters then presented their case, including testimony from the general manager of Bear River about several transfers of stock Robert made both before and after the Third Deed was executed in June 2007. He testified that Robert had transferred some of his shares to a property buyer in 1992 and had transferred more shares to a different buyer in February 2007. The general manager also testified that Robert had transferred his remaining shares to the Trust in November 2007 and finally to the Daughters in 2016. The Daughters all testified that Robert had been "adamant" about not transferring his remaining shares to anyone—especially the Zundels.

¶12 The Zundels then moved for judgment as a matter of law under rule 50 of the Utah Rules of Civil Procedure. They argued the phrase "water rights" in the Third Deed unambiguously referred to Robert's Bear River shares and the district court should decide as a matter of law that Robert intended to transfer the shares. The court denied the motion, finding there were disputed issues of fact and the jury needed to decide whether the Bear River shares were appurtenant and whether Robert intended to transfer them. After being instructed on each of these questions, the jury found in a special verdict form that the Bear River shares were appurtenant to the Property but that Robert did not intend to transfer them when he sold the Property to Brough Properties in 2007.

¶13 The Zundels then filed a renewed motion for judgment as a matter of law under rule 50(b)(3) of the Utah Rules of Civil

Procedure, arguing the plain language of the Third Deed unambiguously manifested Robert's intent and, thus, because the jury had already decided that the shares were appurtenant, the court should direct the verdict in their favor. In its memorandum decision, the district court denied the Zundels' renewed motion, concluding that the "issue of Robert Brough's intent was properly given to the jury to decide as the finder of fact." And the court concluded that a "reasonable jury, considering all evidence presented at trial, could find in favor of [the Daughters] on the issue of Robert Brough's intent." The court then entered judgment in favor of the Daughters on the Zundels' quiet title claim.

## ISSUE AND STANDARD OF REVIEW

¶14 The Zundels argue the district court erred in denying their renewed motion for judgment as a matter of law. "We review [a] district court's ruling on a motion for judgment as a matter of law for correctness, and in doing so accept as true all testimony and reasonable inferences that support the jury's verdict." *Meeks v. Peng*, 2024 UT 5, ¶ 62, 545 P.3d 226 (cleaned up). "Where [a] district court has denied the motion, we will overturn that decision only if the appellant can demonstrate that there was no basis in the evidence, including reasonable inferences which could be drawn therefrom, to support the jury's verdict." *Id.* (cleaned up).

## ANALYSIS

¶15 Utah law has long drawn a distinction between water rights and shares in mutual irrigation corporations, which represent these rights. *See Southam v. South Despain Ditch Co.*, 2014 UT 35, ¶ 18, 337 P.3d 236 (noting that the value of water shares "is in the water rights to which the shares afford access" but that "the transfer of shares in a nonprofit mutual irrigation company" is "not the transfer of water rights per se"); *George v. Robison*, 63 P.

819, 820 (Utah 1901) ("The stock is merely the evidence of the holder's title to a certain amount of water."). In 1943, the Utah Code stated that water rights "shall be transferred by deed in substantially the same manner as real estate, except when they are represented by shares of stock in a corporation, in which case water shall not be deemed to be appurtenant to the land." *See* Act of Feb. 24, 1943, ch. 105, § 1, 1943 Utah Laws 154, 154–55 (codified at Utah Code § 73-1-10 (1953)). Our supreme court, in *Brimm v. Cache Valley Banking Co.*, 269 P.2d 859 (Utah 1954), interpreted this language as creating a presumption that shares do not pass with the land, which a grantee could overcome by showing "by clear and convincing evidence that said water right was in fact appurtenant and that the grantor intended to transfer the water right with the land, even though no express mention of any water right was made in the deed." *Id.* at 864.

¶16     In 1996, this statutory language was incorporated as a new provision in section 73-1-11, which read, "The right to the use of water evidenced by shares of stock in a corporation shall not be deemed appurtenant to the land." Utah Code § 73-1-11(4) (1996). Utah courts have "consistently held that this statute, as well as its previous iterations," gives rise to *Brimm*'s rebuttable presumption. *Sanpete Am., LLC v. Willardsen*, 2011 UT 48, ¶ 36, 269 P.3d 118. Thus, to show they were entitled to the Bear River shares, the Zundels were required to rebut the presumption that the shares did not pass with the Property by showing by clear and convincing evidence that (1) the shares were appurtenant to the Property and (2) Robert intended to transfer them to Brough Properties in 2007.[6] *See id.*

---

6. The Daughters and Bear River argue that subsequent statutory amendments leave the rebuttable presumption established in *Brimm* on "shaky ground," and they urge us to affirm the district court on an alternative basis. But they do not explicitly ask us to overrule *Brimm*—nor could we. *See Ortega v. Ridgewood Estates*

(continued…)

¶17 The jury determined that while the shares were appurtenant to the Property, Robert did not intend to transfer them. The Zundels argue the district court should have granted their renewed motion for judgment as a matter of law because the plain language of the Third Deed manifested Robert's intent, allowing the court to resolve the issue rather than submitting it to the jury. In the alternative, the Zundels argue they were entitled to judgment as a matter of law because there was insufficient evidence to support the jury's verdict.

## I. Ambiguity of the Third Deed

¶18 The Zundels argue the plain language of the Third Deed unambiguously manifested Robert's intent to *transfer* his Bear River shares to Brough Properties in 2007 and, thus, the district court should have decided intent as a matter of law on their renewed motion. But during oral argument before this court, the Daughters argued the Third Deed unambiguously showed Robert's intent to *keep* his shares. Thus, both parties contend that the plain language of the Third Deed flows unambiguously in their favor.

¶19 "Deeds are to be construed like other written instruments," and thus, "we determine the parties' intent from the plain language of the four corners of the deed." *Keith v. Mountain Resorts Dev., LLC*, 2014 UT 32, ¶ 21, 337 P.3d 213 (cleaned up). "If the language of the deed is unambiguous, the intention of the parties may be determined as a matter of law based on" this plain language. *Id.* ¶ 22 (cleaned up). The parties' intent is "open to interpretation only when the words used are ambiguous," *id.* (cleaned up), meaning they are "capable of more than one

_____

*LLC*, 2016 UT App 131, ¶ 30, 379 P.3d 18 ("We are bound by vertical stare decisis to follow strictly the decisions rendered by the Utah Supreme Court." (cleaned up)). *Brimm* remains good law, the district court correctly applied it, and we see no reason to affirm on an alternative basis.

reasonable interpretation," *Ocean 18 LLC v. Overage Refund Specialists LLC (In re Excess Proceeds from Foreclosure of 1107 Snowberry St.)*, 2020 UT App 54, ¶ 23, 474 P.3d 481 (cleaned up). "[I]f the court determines that either of the competing interpretations could reasonably have been what the parties intended when they entered into the contract, then the contract is ambiguous." *Brady v. Park*, 2019 UT 16, ¶ 55, 445 P.3d 395.

¶20 Here, both the Zundels and the Daughters advance reasonable interpretations of the language of the Third Deed. The Zundels argue that the only water rights Robert had were represented by his Bear River shares and, thus, the Third Deed's reference to "all water rights appurtenant thereto, if any" could only have been meant to refer to those specific shares. But the Daughters contend that because water rights and water shares are distinct legal concepts, *see supra* ¶¶ 15–16, Robert did not understand the language of the Third Deed to refer to his Bear River shares. Because both interpretations are reasonable readings of the Third Deed, we conclude, as the district court did, that the plain language of the phrase "[t]ogether with all water rights appurtenant thereto, if any" is ambiguous. Thus, the district court correctly concluded that intent was a factual question for the jury.

## II. Sufficiency of the Evidence

¶21 The Zundels also argue the district court should have granted their renewed motion for judgment as a matter of law because, even if the question of Robert's intent was properly before the jury, there was insufficient evidence to support the verdict. "A party is entitled to judgment as a matter of law if 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Meeks v. Peng*, 2024 UT 5, ¶ 62, 545 P.3d 226 (quoting Utah R. Civ. P. 50(a)(1)). In ruling on a motion for judgment as a matter of law, the district court "must look at the evidence and all reasonable inferences in a light most favorable to the nonmoving party." *Smith v. Volkswagen*

*SouthTowne, Inc.*, 2022 UT 29, ¶ 46, 513 P.3d 729 (cleaned up). And "where the district court has denied the motion, we will overturn that decision only if the appellant can demonstrate that there was no basis in the evidence, including reasonable inferences which could be drawn therefrom, to support the jury's verdict." *Meeks*, 2024 UT 5, ¶ 62 (cleaned up).

¶22 Here, there was sufficient evidence to support the jury's determination that Robert did not intend to transfer his Bear River shares to Brough Properties in 2007. Evidence was presented indicating that it upset Robert to discuss transferring his shares and he had instructed each of the Daughters not to transfer any Bear River shares to the Zundels. And there was evidence that Robert knew how to transfer his shares to Brough Properties had he wanted to. Robert transferred some of his shares when he sold property to a buyer in 1992 and other shares to a different buyer in February 2007—only a few months before the Third Deed was executed. And Robert had also sold other property to Ben, which did not include any Bear River shares.

¶23 There was also evidence indicating Robert did not understand the phrase "water rights" in the Third Deed to refer to his Bear River shares. In the Trust declaration, Robert listed his Bear River shares separately from his real property, under a heading that read "Water Stock." There was evidence suggesting the parties intended to incorporate the subdivision on the Property into Tremonton City—anticipating access to culinary water and no longer needing to irrigate the land—thus negating the need for the Bear River shares to transfer in the Third Deed. And a few months after the Third Deed was executed, Robert transferred his shares to the Trust—not to Brough Properties. Later, before his death, Robert transferred the shares from the Trust to the Daughters.

¶24 Further, the purchase agreement and the First Deed between the Trust and Brough Properties did not mention water rights or water shares. And Ben testified that the phrase "all water

rights appurtenant thereto, if any" was language inserted by the title company into the Second Deed and then copied into the Third Deed. Ben also testified that the Second Deed and the Third Deed were executed to correct a mistake in Brough Properties' name as it appeared in the First Deed.

¶25   The Zundels contend that this evidence was improperly admitted because the Third Deed unambiguously manifested Robert's intent and thus intent should have been decided as a matter of law. But, as we concluded above, *see supra* Part I, the Third Deed is ambiguous, rendering intent a question of fact for the jury to decide. And "whether competent or incompetent, all evidence submitted to the jury must be considered by the court." *Smith*, 2022 UT 29, ¶ 46 (cleaned up). We conclude that the evidence presented—viewed in a light most favorable to the Daughters—was sufficient to support the jury's determination that Robert did not intend to transfer his Bear River shares. Accordingly, the district court did not err in denying the Zundels' renewed motion for judgment as a matter of law.

CONCLUSION

¶26   The Third Deed is ambiguous as to Robert's intent to transfer his Bear River shares. Thus, the issue was a question of fact for the jury and the district court rightly refused to decide it as a matter of law. Further, sufficient evidence supported the jury's finding that Robert did not, in fact, intend to transfer the Bear River shares. We therefore affirm the district court's denial of the Zundels' renewed motion for judgment as a matter of law.

—————