**2021 UT 16**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

WEST VALLEY CITY,
*Appellant,*

*v.*

BRET W. RAWSON, P.C., General Counselor and Administrator of
the Utah State Fraternal Order of Police Legal Plan
*Appellee.*

No. 20190426
Heard November 13, 2020
Filed May 27, 2021

On Appeal of Interlocutory Order

Third District, Salt Lake
The Honorable Andrew H. Stone
No. 150901693

Attorneys:

Stanley J. Preston, Bryan M. Scott, Brandon T. Crowther,
Salt Lake City, for appellant

Nate N. Nelson, Jeremy G. Jones, Sandy, for appellee

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in
which CHIEF JUSTICE DURRANT, JUSTICE HIMONAS, JUSTICE PEARCE,
and JUSTICE PETERSEN joined.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1 This is a civil action for reimbursement of attorney fees incurred in the successful defense of criminal charges. The underlying criminal case involved a manslaughter charge against a West Valley City police officer arising out of conduct in the line of duty. That charge was dismissed after a preliminary hearing. The officer assigned his claim to a right of reimbursement of his attorney fees to Bret W. Rawson, P.C. ("Rawson"), and Rawson filed this action seeking reimbursement of reasonable attorney fees under Utah Code section 52-6-201. This statute provides a

right of reimbursement of "reasonable attorney fees and court costs necessarily incurred" in the successful defense of a criminal charge against a governmental employee arising out of his employment. UTAH CODE § 52-6-201.

¶2    West Valley City conceded Rawson's right to recover fees under the statute but asserted that the amount of available fees was limited in two ways. First, the City claimed that a $60,000 donation by a legal defense fund should be subtracted from the total amount of fees "necessarily incurred" in the defense of the charge against the officer. Second, the City asserted that the amount of fees "necessarily incurred" was capped by a flat fee agreement entered into between the officer's defense team and his counsel. The district court denied the motion, rejecting the City's first argument outright and concluding that summary judgment could not be entered on the second in light of ambiguities in the flat fee agreement.

¶3    We agreed to hear the case on interlocutory appeal. While the case was pending, Rawson submitted a "partial suggestion of mootness"—representing that the underlying flat fee agreement had been amended by an addendum entered into by the parties to the original agreement and asserting that the addendum mooted the parties' briefing on the second question presented.

¶4    We affirm in part and remand. On the first issue, we agree with the district court that the statute does not require Rawson to subtract the donation made from a legal defense fund in calculating the "reasonable attorney fees and court costs." On the second issue, we highlight important questions the parties have raised, but recognize that these questions may be informed by the addendum submitted in the suggestion of partial mootness, and remand to allow the parties and the district court to address these questions in the first instance.

I

¶5    While on duty as a West Valley City police officer, Shaun Cowley was involved in a shooting that resulted in a woman's death. Cowley was charged with manslaughter, and the Utah State Fraternal Order of Police (FOP) agreed to provide legal services for his defense.

¶6    The FOP, through its general counsel Bret W. Rawson, P.C., entered into a Flat Fee Agreement with two attorneys, Lindsay Jarvis and Paul Cassell, "for the purpose of providing

legal defense services" for Cowley. In Paragraph 2 of the Agreement, attorneys Jarvis and Cassell agreed to represent Cowley for a flat rate of $100,000 if the matter was "adjudicated by trial" and $35,000 "if the matter [was] decided by dismissal or plea agreement as a consequence of the Preliminary Hearing." In Paragraphs 4 and 5, the agreement identified the attorneys' "standard" hourly rates—a $250 hourly rate for Jarvis and a $500 hourly rate for Cassell. These paragraphs also stated that the attorneys had agreed to accept the "flat fee . . . in view of the importance of providing a strong defense" for Cowley. Finally, Paragraphs 4 and 5 noted that it was "understood by the parties that should any application for attorneys' fees awardable against the State of Utah become available, the circumstances supporting a flat fee (which produces compensation at less than [the attorneys'] hourly rate[s]) would no longer exist." And in that event, the agreement indicated that the "attorney's fees that would be sought from the State of Utah would be sought at" the hourly rates identified in the agreement.

¶7    The criminal charge against Officer Cowley was later dismissed in a preliminary hearing. And this civil case was then filed in an attempt to recover the costs and fees incurred in the successful defense of the underlying criminal action.

¶8    The case was filed by Rawson as assignee of Cowley's claim for reimbursement of his attorney fees and costs. Rawson asserted a statutory claim for a right of reimbursement from West Valley City under Utah Code section 52-6-201—a provision establishing a right of an "officer or employee" to recover "reasonable attorney fees and court costs necessarily incurred in the defense of" a criminal charge "arising out of any act or omission" of an "officer or employee during the performance of the officer or employee's duties." UTAH CODE § 52–6–201(1).

¶9   Rawson sought to recover $48,231.97 in costs and $302,863.13 in attorney fees, with the fee amount calculated on the basis of the hourly rates identified in the Flat Fee Agreement. The City conceded its statutory obligation to provide reimbursement for "reasonable attorney fees and costs necessarily incurred" in defense of the charge against Cowley. But it contested Rawson's right to recover the full amount of requested attorney fees, asserting that not all of the fees in question were "necessarily incurred" under the statute.

¶10 The City moved for partial summary judgment on two grounds. First, the City noted that FOP had solicited and received

a $60,000 donation from the Law Enforcement Legal Defense Fund (LELDF) to support the Cowley defense. Because that donation had been given with no obligation of repayment, the City asserted that when computing the fees "necessarily incurred" in the underlying criminal case, the court should subtract the amount of the donation, because it was money Rawson never had to pay. Second, the City asserted a right to judgment as a matter of law under a provision of the Flat Fee Agreement stating that counsel agreed to accept a "flat fee" for their work in representing Officer Cowley. The agreed-upon flat fee was a $35,000 payment in the event of dismissal at the preliminary hearing. And the City asserted that there was no language in the agreement requiring Rawson to pay any additional amounts under the attorneys' hourly rates. So the City maintained that only the $35,000 flat fee could be considered an attorney fee "necessarily incurred" under the terms of Utah Code section 52-6-201(1).

¶11 The district court denied the City's motion. On the first point, the district court concluded that section 201(1) does not call for an "offset[]" from "fees otherwise necessarily incurred" for "financial assistance" provided by others. In the district court's view, "'necessarily incurred' does not equal 'net owing after contributions.'" "Rather, these types of donations may be considered akin to medical benefits paid to a tort victim—they are a collateral source of payment for injuries incurred." And because "[n]othing in the record indicates that the LELDF contributions altered what had been or was to be incurred by Cowley," the court denied the City's motion to the extent it sought a credit for the $60,000 LELDF donation.

¶12 The district court also rejected the City's argument on the second point. It accepted the City's view that the right of reimbursement of attorney fees under the statute "is limited to those fees which are incurred as a result of an obligation which arises at some point, either contractually or because a benefit was conferred." But it found that the Flat Fee Agreement was "as a whole ambiguous," citing "internal inconsistencies" in certain paragraphs of the agreement. The district court denied the City's motion on the second point on that basis, concluding that the cited ambiguity "necessitat[ed] an inquiry into the parties' intent" on whether there was "a continuing obligation" of payment beyond the flat fee under the agreement.

¶13 We granted the City's petition for interlocutory appeal. After oral argument in this court, Rawson filed a "suggestion of

partial mootness," asserting that the intentions of the parties to the Flat Fee Agreement had been clarified in an "Addendum" signed by Rawson, Jarvis, Cassell, and Cowley. The City opposed the suggestion of mootness and complained that Rawson was seeking improperly to expand the record on appeal or to submit a supplemental brief. It also asked that we deny the suggestion of mootness and award the City its fees incurred in responding.

II

¶14　The City seeks reversal of the denial of its motion for summary judgment on two central grounds. It contends that the district court erred in declining to deduct the $60,000 LELDF donation from the amount of fees "necessarily incurred" in the underlying criminal proceeding. And it also asserts that such fees cannot encompass any amounts beyond the $35,000 flat fee set forth in the agreement.

¶15　We affirm on the first ground and remand for further proceedings on the second. In so doing, we note the interlocutory posture of this appeal and highlight the potential impact of the material presented by Rawson in the partial suggestion of mootness.

A

¶16　The City notes that the $60,000 donation from LELDF was made without any obligation of repayment. And it claims that this amount accordingly should not count toward the calculation of an attorney fee "necessarily incurred" in the successful defense of a criminal charge under Utah Code section 52-6-201(1). Citing case law, the City also asserts that the purpose of a statute like this one is to "make[] the vindicated public employee whole." *Salmon v. Davis Cty.*, 916 P.2d 890, 896 (Utah 1996). And the City insists that it would be a "windfall" to allow for recovery of defense fees covered by a donation from a third party given without any obligation of repayment. In a case like this one, the City insists that there is no wrongdoer and thus no basis for application of the "collateral source rule," or for the district court's decision to analogize the payment here to a collateral payment "to a tort victim."

¶17　The collateral source rule may not quite apply here for reasons noted by the City. And we have indeed stated that the statute is aimed at making employees "whole." But the question presented is controlled by the operative text of the governing statute—not by our equitable sense of how best to make

employees whole. And the statute makes clear that there is a right of reimbursement for the full amount of the "reasonable attorney fees" that were "necessarily incurred" in Officer Cowley's defense in the first instance. UTAH CODE § 52-6-201(1).

¶18 The LELDF donation did not alter the amount of the "reasonable attorney fees" incurred in Officer Cowley's defense in the first instance. As the district court noted, there is no basis in the record for concluding "that the LELDF contributions altered what had been or was to be incurred" in the defense. Instead, the LELDF donation took the form of third-party "financial assistance" in support of the defense team. Such assistance did not reduce or alter the amount of fees incurred for Cowley's defense in the first instance—any more than a defendant's receipt of financial support from a relative or friend would do so.

¶19 The City's motion for summary judgment failed on this ground. The LELDF donation did not reduce the amount of the defense fees incurred in the first instance, and there is thus no basis for the request that that amount be deducted from the amount of fees "necessarily incurred." We affirm the district court on this basis.

B

¶20 The City also asserts that no amount above the $35,000 flat fee identified in the agreement can count as an obligation of payment of fees "necessarily incurred" in the Cowley defense. It contends that it is entitled to judgment as a matter of law on this point—either because the agreement unambiguously limits the obligation for payment of fees to the $35,000 amount or because the condition for any such payment (an application for fees "awardable against the State of Utah") was never triggered. We stop short of a conclusive resolution in light of the interlocutory posture of this appeal and the material submitted in the suggestion of partial mootness.

1

¶21 The City complains that the district court erred to the extent it relied on inconsistencies or ambiguities in provisions not material to the dispute over the existence of an obligation of payment beyond the $35,000 fixed fee. It notes, for example, that the district court highlighted tension between the flat fee provision of paragraph 2 and the paragraph 5 proviso "for a $50,000 flat fee (through a specified date) to be paid to Mr.

Cassell." And because neither party is seeking to credit the latter provision over the former, the City contends that this ambiguity is not a proper ground for opening the door to extrinsic evidence on the question in dispute—which is whether there is an obligation of payment beyond the fixed fee.

¶22 The City's premise is correct. An alleged ambiguity can foreclose an interpretation of a contract as a matter of law only if it suggests that each of two "proffered alternative interpretations" of a given contract provision is "plausible and reasonable in light of the language used." *Mind & Motion Utah Invs., LLC v. Celtic Bank Corp.*, 2016 UT 6, ¶ 24, 367 P.3d 994 (citation omitted). As the First Circuit explained, "a party claiming to benefit from ambiguity (for example, by being allowed to proffer extrinsic evidence supporting its interpretation)" must therefore "show ambiguity in the meaning of the agreement with respect to the very issue in dispute." *Donoghue v. IBC USA (Publ'ns), Inc.*, 70 F.3d 206, 215 (1st Cir. 1995). "Demonstration of ambiguity in some respect not material to any existing dispute serves no useful purpose." *Id.*

¶23 For this reason, it would be error for the court to cite inconsistencies or ambiguities in contract provisions not in dispute as a basis for opening the door to extrinsic evidence of relevance to the matter actually in controversy. To some extent, moreover, we can see how the City might view the district court's decision as so doing. The district court appeared to cite to some inconsistencies in provisions not in dispute in support of its determination of an ambiguity on the matter in question— whether the parties to the agreement intended an obligation of payment beyond the $35,000 fixed fee.

¶24 The district court's decision, however, ultimately focused on that point of actual dispute. In denying the City's motion, the district court concluded that the $35,000 cap specified in paragraph 2 of the agreement could "be read to limit the payment of fees, but not the amount that the plaintiff would ultimately be obligated to pay the attorneys if an application for fees could be made." And it held that there were genuine disputes "as to the plaintiff's obligation" under the agreement "and, in turn," on "what was 'necessarily incurred' under § 52-6-201(1)."

¶25 The City also challenges that decision on appeal. It notes that paragraph 2 reflects an agreement "to pay attorney fees" to defense counsel in the amount of $35,000 "if the matter is decided by dismissal or plea agreement as a consequence of the

Preliminary Hearing" and asserts that paragraphs 4 and 5 state that Jarvis and Cassell agree to "accept[] a flat fee" for their work. And the City claims that this is the only payment obligation referred to as such in the agreement.

¶26 The City acknowledges the contingency provisions in paragraphs 4 and 5 of the agreement—provisions stating that the "circumstances supporting a flat fee" or "forbearance" of charges at hourly rates "would no longer exist" if an "application for attorneys' fees awardable against the State of Utah" should "become available." But it asserts that these provisions establish no requirement of "payment to Jarvis and Cassell of any additionally awarded funds"—"unlike paragraph 2, which plainly states that FOP 'agrees to pay' the applicable flat fee to Jarvis and Cassell." "Since the plain language of Paragraphs 4 and 5 contains no 'payment' language," the City asserts that there is "no legal obligation to pay Jarvis and Cassell any fees recovered under" those provisions, and thus no basis for treating any additional fees as "necessarily incurred" under the statute.

¶27 Rawson presents a different view of the contingency provisions of paragraphs 4 and 5. In context, Rawson asserts that these provisions "mak[e] clear that the circumstances supporting [a] flat fee" would "no longer exist in the event that fees are sought against the State." If and when such fees were sought, Rawson contends that the agreement makes clear that "reasonable attorney fees would be sought from the State of Utah at the normal hourly rate"—a proviso that clearly if implicitly indicates that "additional payment obligations" would arise in the event of an application against the state. Because an application for fees was made "and the condition subsequent" set forth in paragraphs 4 and 5 "was satisfied," Rawson asserts that there was a requirement of "pursuit of fees at the normal hourly rate."

¶28 The parties thus advance competing views on the question whether the agreement contemplates the existence of an obligation to pay attorney fees beyond the $35,000 flat fee. Yet a provision of a contract is not rendered ambiguous by the bare existence of competing interpretations of it. Extrinsic evidence is called for only where each of the "proffered alternative interpretations 'must be plausible and reasonable in light of the language used.'" *Mind & Motion*, 2016 UT 6, ¶ 24 (citation omitted). One of the parties' interpretations may be "ruled out" as unreasonable based on "the natural meaning of the words in the

contract provision in context of the contract as a whole." *Brady v. Park*, 2019 UT 16, ¶ 55, 445 P.3d 395.

¶29 The City asks us to uphold its interpretation of the agreement as a matter of law. It asserts that only its interpretation "effectively harmoniz[es]" all of the "provisions and terms" of the agreement and insists that any amounts requested beyond the $35,000 flat fee should not count as "necessarily incurred" under the statute. And it asks us to reverse the district court's determination that there is an ambiguity in the sense of two alternative, reasonable interpretations of the agreement.

¶30 We decline to resolve this question on the current record and instead remand for further proceedings on this issue. We do so in light of the material submitted by Rawson with the suggestion of partial mootness—the addendum signed by Rawson, Jarvis, Cassell, and Cowley. The addendum seeks to "clarify" the parties' intentions in the Flat Fee Agreement on questions raised in the briefing and explored by this court at oral argument. In light of that development, Rawson asks us to decline to resolve the matters briefed by the parties on this appeal.

¶31 We accept this invitation in light of the interlocutory posture of this appeal. In so doing, we agree with a threshold point raised by the City—ordinarily, the record on appeal is closed and the parties are not permitted to supplement it. But this case as presented is in an unusual posture. Our jurisdiction in an interlocutory appeal is discretionary. *See* UTAH R. APP. P. 5; *Salt Lake Tribune v. State Records Comm.*, 2019 UT 68, ¶ 11, 456 P.3d 728 (explaining that "[t]he decision to grant a petition to review an interlocutory order is discretionary"). We thus retain the discretion to dismiss such an appeal without weighing in on any of the questions presented.

¶32 That discretionary power also encompasses the authority to decide which questions presented in the interlocutory briefing may properly be resolved on the current record and which questions should be left for further development on remand. And in this unusual circumstance we decline to resolve the question presented on the basis of the district court's decision on the current record, and instead remand to allow further development in the district court.

¶33 We note that the City has raised objections to the propriety of the addendum and to its relevance to the questions presented. Those objections are noted and not resolved by our

decision. In remanding, we are not overruling the City's objections. We are simply concluding that there is some possibility that our analysis could be affected by the matters presented in the addendum, and some wisdom in allowing the district court to decide the admissibility of the addendum and the questions it introduces in the first instance.

2

¶34 The City also asks us to reverse the district court on the ground that the condition for any payment obligation under the agreement (an application for fees "awardable against the State of Utah") was simply not triggered in this case. On this point, the City asserts that there was never any basis for an application for an award of fees "against the State of Utah" given that Officer Cowley was a West Valley City employee and thus had a statutory right of reimbursement only against the City—not "the State of Utah."

¶35 Rawson has advanced a different view, asserting that the reference to "State of Utah" encompasses governmental entities more broadly, including West Valley City. And again, Rawson asserts that the analysis of this question is informed and may be altered by the addendum submitted with the suggestion of partial mootness.

¶36 We decline to resolve this question in light of the suggestion of partial mootness. Again we are not ruling on the admissibility or relevance of the addendum submitted by Rawson. But we remand to allow the parties and the district court to consider the City's objections to the addendum and to decide in the first instance whether the condition for any payment obligation was triggered in this case.

III

¶37 We affirm the district court's determination that there is no statutory basis for excluding the $60,000 donation from LELDF from the calculation of attorney fees "necessarily incurred" under the statute. We remand for further proceedings on the question whether any amounts above the $35,000 flat fee identified in the agreement can count as an obligation of payment of fees "necessarily incurred" in the Cowley defense. And we deny the City's request for its fees incurred in responding to the suggestion of mootness.

_____