2023 UT App 67

# THE UTAH COURT OF APPEALS

CRAIG R. VIERIG,
Appellee,
*v.*
SARAH A. THERRIAULT,
Appellant.

Amended Opinion*
No. 20210258-CA
Filed June 15, 2023

Third District Court, Salt Lake Department
The Honorable Robert P. Faust
No. 190907944

Steven G. Loosle, Attorney for Appellant

Troy L. Booher, Beth E. Kennedy, and
Taylor P. Webb, Attorneys for Appellee

JUDGE RYAN D. TENNEY authored the lead opinion, in which
JUDGES GREGORY K. ORME and JOHN D. LUTHY concurred.
JUDGE GREGORY K. ORME authored a separate opinion, in which
JUDGE JOHN D. LUTHY concurred.

TENNEY, Judge:

¶1 In 2011, Craig Vierig gave Sarah Therriault a trust deed (the Trust Deed) to secure a $200,000 debt. Years later, Vierig sued Therriault, seeking to invalidate both the Trust Deed and the

---

* This amended opinion replaces the opinion that was originally issued on April 13, 2023. The text of the original opinion is unchanged, but we have now added additional analysis at the end to address arguments raised by the appellee in a rehearing petition. The separate opinion authored by Judge Orme (and joined by Judge Luthy) was issued in conjunction with the original opinion and is unaffected by the additional analysis.

underlying debt. The district court granted Therriault's motion for summary judgment, thereby upholding the validity of both. As part of this same case, Therriault counterclaimed, asserting that the debt was now due and that she was entitled to foreclose on the property to collect on it. But the court granted Vierig's request for summary judgment against the counterclaim, ruling that the debt was not yet due and that Therriault was not entitled to foreclose on the property.

¶2　Neither party has appealed the summary judgment ruling that went against them. Instead, this appeal only concerns Therriault's request for attorney fees. Therriault's request was based on a provision in the Trust Deed that obligated Vierig to pay "all" of Therriault's "costs and expenses of collection." In Therriault's view, this provision applies to the attorney fees she incurred while litigating the validity of the Trust Deed and those that she incurred prosecuting her counterclaim. The district court rejected both requests as a matter of law. As explained below, we first conclude that the fee provision was ambiguous as to whether Therriault could collect the fees she incurred defending the validity of the Trust Deed. Because it was ambiguous in this respect, its interpretation presents a question of fact that the district court should decide after receiving evidence of the parties' intent. We accordingly reverse that aspect of the court's ruling. As to the fees that Therriault incurred prosecuting her counterclaim, however, we conclude that there's no ambiguity and that Therriault is not entitled to collect on those fees. We accordingly affirm that portion of the court's ruling.

BACKGROUND

¶3　Craig Vierig and Sarah Therriault were in a romantic relationship from about 2000 through 2013. In October 2011, Vierig executed the Trust Deed in favor of Therriault, wherein he gave Therriault a security interest in real property that he owned. The Trust Deed stated that it was "for the purpose of securing payment of the indebtedness evidenced by a promissory

note . . . in the principal sum of $200,000.00, payable to [Therriault]."

¶4 In 2019, Vierig sued Therriault, alleging that "[n]o Promissory Note was ever executed, and no debt is owed to" her. Vierig accordingly sought (1) a declaratory judgment that Therriault had "no right, title, claim, or interest to the subject property" and (2) a quiet title decree "removing the offending Trust Deed from the subject property."

¶5 Therriault filed an answer and counterclaim. In her counterclaim, Therriault alleged that the parties had agreed for the $200,000 to "be paid upon the sale or refinancing of the property pledged as security or upon the death of Vierig." Although neither event had yet happened, Therriault alleged that Vierig had now anticipatorily "repudiated the Debt" by filing his suit. From this, Therriault sought (1) a declaratory judgment that the $200,000 was "due and owing," as well as (2) an order requiring "that the [p]roperty be sold, and the proceeds be applied to the Debt."

¶6 The parties filed competing motions for summary judgment, and the district court held a hearing on those motions. The court entered an order granting Therriault's motion for summary judgment against Vierig's suit, thus concluding that the debt was valid and the Trust Deed was enforceable. Though that order touched on Therriault's counterclaim, it did not fully resolve her arguments about anticipatory repudiation or her requests for relief. In response to a request for clarification from Therriault, the court subsequently issued a second order in which it rejected Therriault's assertion that Vierig had anticipatorily "repudiated the Debt." There, the court ruled that "since the Trust Deed is NOT due until the [p]roperty is sold or [Vierig] dies, he is not breaching the same and has not repudiated it by asking the Court to interpret the document[,] and therefore, there is no[t] an anticipatory repudiation." The court accordingly denied her request for foreclosure on the property.

¶7 In addition to the litigation about the competing motions for summary judgment, the parties litigated the question of whether Therriault was entitled to attorney fees. The Trust Deed contained a provision (the Fee Provision) under which Vierig was obligated "to pay all costs and expenses of collection (including Trustee's and attorney's fees in event of default in payment of the indebtedness secured hereby)." Relying on that provision, Therriault requested attorney fees for her efforts "defending the Complaint and prosecuting the Counterclaim," arguing that they were "inextricably interwoven and both fall within the scope of fees and costs of 'collection.'"

¶8 The court later issued a decision denying the request for attorney fees. In the court's view, the Fee Provision "limits the award of attorney fees to default in payment of indebtedness." The court concluded that "[b]ecause the indebtedness is not yet due, and there has been no default, no attorney fees are proper." The court thus specifically rejected Therriault's argument that she was entitled to fees incurred while defending the validity of the Trust Deed and debt. On this, the court opined that "costs and attorney fees are distinguishable," and since Therriault was "not 'collecting' anything, the attorney fees are not taxed as costs."

¶9 Neither party appealed the court's rulings on the competing summary judgment motions. Therriault, however, timely appealed the court's denial of her request for attorney fees.

## ISSUE AND STANDARD OF REVIEW

¶10 Therriault argues that the district court erred when it concluded that she was not entitled to recover her attorney fees under the Fee Provision. "Whether attorney fees are recoverable is a question of law which we review for correctness." *Anderson v. Doms*, 1999 UT App 207, ¶ 9, 984 P.2d 392. "But where a contractual term or provision is ambiguous as to what the parties intended, the question becomes a question of fact to be

determined by the fact-finder." *Brady v. Park*, 2019 UT 16, ¶ 53, 445 P.3d 395.


ANALYSIS

¶11     Therriault argues that she was entitled to the attorney fees she incurred (1) defending the validity of the debt and the Trust Deed and (2) prosecuting her counterclaim. Our decision proceeds in three parts. In Part A, we set forth the governing framework. In Part B, we conclude that both sides have put forth reasonable interpretations of the Fee Provision with respect to the fees Therriault incurred defending the validity of the debt and the Trust Deed. Because of this, we remand that question for further development and decision. Finally, in Part C, we conclude that there is no ambiguity with respect to the fees Therriault incurred prosecuting her counterclaim. Instead, with respect to those fees, we affirm the district court's ruling.

A.      Framework

¶12     "As a general rule, attorney fees are recoverable only if authorized by contract or statute." *Anderson & Karrenberg v. Warnick*, 2012 UT App 275, ¶ 9, 289 P.3d 600. Here, Therriault does not argue that she was entitled to attorney fees by statute; rather, she argues that she was entitled to attorney fees by contract—i.e., under the Fee Provision from the Trust Deed. As noted, that provision obligated Vierig "to pay all costs and expenses of collection (including Trustee's and attorney's fees in event of default in payment of the indebtedness secured hereby)."

¶13     "If the legal right to attorney fees is established by contract, Utah law clearly requires the court to apply the contractual attorney fee provision and to do so strictly in accordance with the contract's terms." *Hahnel v. Duchesne Land, LC*, 2013 UT App 150, ¶ 16, 305 P.3d 208 (quotation simplified). "Under basic rules of contract interpretation, courts first look to the writing alone to determine its meaning and the intent of the contracting parties."

*Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, ¶ 44, 201 P.3d 966. "If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *Id.* (quotation simplified). "But where a contractual term or provision is ambiguous as to what the parties intended, the question becomes a question of fact to be determined by the fact-finder." *Brady v. Park*, 2019 UT 16, ¶ 53, 445 P.3d 395.

¶14 A "provision of a contract is not rendered ambiguous by the bare existence of competing interpretations of it." *West Valley City v. Bret W. Rawson, P.C.*, 2021 UT 16, ¶ 28, 489 P.3d 191. Instead, a provision is ambiguous "if it is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." *Brady*, 2019 UT 16, ¶ 54 (quotation simplified). A "reasonable interpretation is an interpretation that cannot be ruled out, after considering the natural meaning of the words in the contract provision in context of the contract as a whole, as one the parties could have reasonably intended." *Id.* ¶ 55. "If both sides advance interpretations" of the provision "that are plausible and reasonably supported by the document's language," then the provision is deemed ambiguous, "even if neither party actually uses that label to describe" it. *Ocean 18 LLC v. Overage Refund Specialists LLC (In re Excess Proceeds from Foreclosure of 1107 Snowberry St.)*, 2020 UT App 54, ¶ 25, 474 P.3d 481.

¶15 When confronted with an ambiguous contractual provision, "we seek to resolve the ambiguity by looking to extrinsic evidence of the parties' intent." *Brady*, 2019 UT 16, ¶ 56 (quotation simplified). A "determination of the parties' intent based on extrinsic evidence is a factual determination that should be made by the fact-finder." *Id.* If "extrinsic evidence does not reveal the intent of the parties, a district court should then, and only then, resolve the ambiguity against the drafter." *Id.* (quotation simplified); *see also Gillmor v. Macey*, 2005 UT App 351, ¶ 38 n.16, 121 P.3d 57 (referring to "the doctrine of construing

ambiguities in a contract against the drafter" as "a kind of tie-breaker" that is "used as a last resort by the fact-finder" if the "receipt and consideration of all pertinent extrinsic evidence has left unresolved what the parties actually intended" (quotation simplified)).

¶16 Consistent with this, if a district court interprets a contractual provision as a matter of law but an appellate court later reverses and concludes that the provision is ambiguous, the proper result is a "remand to allow the fact-finder to determine the parties' intent with respect to [the] issues." *Northgate Vill. Dev., LC v. Orem City*, 2014 UT App 86, ¶ 39, 325 P.3d 123; *see also Beckman v. Cybertary Franchising LLC*, 2018 UT App 47, ¶ 83, 424 P.3d 1016; *Hemingway v. Construction by Design Corp.*, 2015 UT App 10, ¶ 17, 342 P.3d 1135. And of note, Utah's appellate courts have followed this same procedure when the provision at issue is an attorney fee provision. *See, e.g.*, *Bret W. Rawson, P.C.*, 2021 UT 16, ¶¶ 28, 30 (considering the parties' "competing views" on a contractual obligation to pay attorney fees, finding ambiguity, and declining "to resolve this question on the current record and instead remand[ing] for further proceedings on this issue"); *Beckman*, 2018 UT App 47, ¶¶ 76, 83 (determining the attorney fee provision was "ambiguous in this context" and "remand[ing] this issue to the trial court to consider extrinsic evidence to determine its meaning").

B.      Fees Incurred Litigating the Validity of the Debt and the Trust Deed

¶17 As noted, the district court ruled that Therriault was not entitled to any fees under the Fee Provision. Notably, it did so without any reference to any evidence of the parties' intent. In this sense, the court seems to have regarded the Fee Provision as being an unambiguous provision that could be interpreted as a matter of law. Given this, the question is whether both sides have put forward reasonable interpretations of the Fee Provision. If they have, it becomes a question of fact that must be determined based on extrinsic evidence of the parties' intent. We conclude that this

is so with respect to the fees Therriault incurred defending the validity of the debt and the Trust Deed.

1.     Vierig's Interpretation

¶18     The Fee Provision states that Vierig must "pay all costs and expenses of collection (including Trustee's and attorney's fees in event of default in payment of the indebtedness secured hereby)." Vierig focuses on the term "collection." "Utah courts have a long history of relying on dictionary definitions to determine plain meaning." *Cook v. Department of Com.*, 2015 UT App 64, ¶ 13, 347 P.3d 5 (quotation simplified). Of note, some dictionaries suggest that the term "collection" refers to the *receipt* of funds. *See, e.g.*, *Collect*, Merriam-Webster[1] (defining the term "collect" as "to claim as due and receive payment for"); *Collection*, Cambridge Dictionary[2] (defining "collection" as "the act of collecting money"). Consistent with this understanding of the term "collection," Black's Law Dictionary defines the phrase "costs of collection" as referring to "[e]xpenses incurred in *receiving* payment of a note; esp., attorney's fees incurred in the effort to collect a note." *Costs of collection*, Black's Law Dictionary (11th ed. 2019) (emphasis added). In light of this, Vierig argues that there is a meaningful difference between fees that Therriault incurred while litigating the question of whether the debt and the Trust Deed were valid (which would not be compensable), and fees that she might separately incur when seeking to collect on the debt once it's due in what would commonly be referred to as a "collection action" (which would be compensable).

¶19     We note that some courts have recognized this very difference in similar cases. The Second Circuit's decision in *Jackson v. Oppenheim*, 533 F.2d 826 (2d Cir. 1976), is illustrative. There, a

---

1. https://www.merriam-webster.com/dictionary/collect [https://perma.cc/4H9S-RKP3].

2. https://dictionary.cambridge.org/us/dictionary/english/collection [https://perma.cc/Y5WA-6JGE].

man (Seller) sold another man (Buyer) shares in a company. *Id.* at 828. The overall sale was effectuated through two promissory notes (each for half the shares), and each note contained language stating that if it was "placed with an attorney for collection," Buyer was required to "pay all costs of collection, including, but not limited to, counsel fees." *Id.* at 828, 830. Buyer later sued, seeking to invalidate the sale based on alleged violations of federal securities laws during the transaction. *Id.* at 831. The district court ruled against Buyer on that claim, as did the Second Circuit. *Id.* at 828–30.

¶20 Importantly for our purposes, the district court in *Jackson* also awarded attorney fees to Seller as "costs of collection," but the Second Circuit reversed that portion of the decision. *Id.* at 827, 830–31. The court explained that "some language more express than 'costs of collection' should have been employed to have placed [Buyer] on notice that he was undertaking to protect [Seller] from costs incurred in defending a separate claim regarding validity of the underlying sale transaction under the federal securities laws." *Id.* at 831. The court also concluded that "the note in no manner suggested liability for fees for defending the federal security law claim merely because [Seller] might counterclaim for collection on the notes." *Id.*

¶21 Other courts have followed this approach. In *Zimmerman v. First Production Credit Ass'n*, 412 N.E.2d 216, 217 (Ill. App. Ct. 1980), for example, the maker of a note sought declaratory judgment that it was not liable on the note. Though the district court rejected the maker's claim, it also held that the payee was not entitled to attorney fees under a provision that stated that if the note was "placed in the hands of an attorney for collection, or suit is brought, on the same or any portion thereof," the maker was obligated to "pay reasonable attorneys' fees, reasonable expenses incurred by the holder or its attorneys in collection and costs of collection." *Id.* (quotation simplified). The appellate court later affirmed the denial of the fee request, explaining that "[h]ad the original suit . . . been brought by [the] defendant for its collection, the provision in regard to attorneys' fees would have

entitled it to reasonable fees." *Id.* "But that suit was not a suit to collect nor was the note placed in the hands of an attorney for collection." *Id.* And in light of this, the court held that "[s]trictly construed, the note makes no provision for payment of attorney's fees." *Id.*

¶22 A Missouri court reached the same outcome in *German-American Bank v. Martin*, 107 S.W. 1108 (Mo. Ct. App. 1908). In the course of a probate case, the administrator of an estate unsuccessfully argued that a promissory note for a debt owed by the deceased to a bank was "invalid." *Id.* at 1109. The bank then tried to collect the attorney fees that it had incurred while defending the validity of the note. *Id.* The district court denied that request, and the bank appealed. *Id.* On appeal, the Missouri Court of Appeals affirmed the denial of the fee request. *Id.* The court relied on the promissory note's language, which stated that if it was "not paid at maturity [the payee] was to pay reasonable expense for collection, including an attorney's fee." *Id.* Because the "services rendered [by the attorney] were in a collateral proceeding, and not in direct effort to collect the note," the court held that the note's language did not allow recovery. *Id.* Instead, the court opined that attorney fees would only be awardable "if the note was not paid at maturity" and the plaintiff was "put to the expense of compelling its collection by the assistance of an attorney." *Id.*

¶23 These principles and these cases support Vierig's view of how to interpret the Fee Provision. In short, since the term "collection" is sometimes understood to narrowly refer to efforts to *receive* money, and since some courts have held that litigation about the validity of an underlying debt is distinct from litigation in a collection action seeking to actually recover the owed money, Vierig can reasonably argue that the Fee Provision does not allow Therriault to recover these fees.

2.        Therriault's Interpretation

¶24        But Therriault advances a reasonable interpretation of her own. Therriault first notes that the Fee Provision didn't just entitle her to "costs of collection." Rather, it entitled her to "*all* costs and expenses of collection." (Emphasis added.) As Therriault points out, the inclusion of the word "all" at the outset of this phrase at least arguably suggests that the parties intended for the ensuing phrase to be interpreted expansively. *See, e.g.*, *World Peace Movement of Am. v. Newspaper Agency Corp.*, 879 P.2d 253, 260 (Utah 1994) (noting, in a statutory interpretation case, that the "use of the word 'all' indicates that [the statute] takes an inclusive, rather than an exclusive, approach to expenses").[3]

¶25        In addition, Therriault points out that the key phrase from this provision isn't just "costs of collection"; rather, it's "costs *and expenses* of collection." (Emphasis added.) It's of course true that the term "costs" sometimes carries a particular legal meaning, and it's also true that "costs" are sometimes distinguished from "attorney fees." *See, e.g.*, *Alpha Partners Inc. v. Transamerica Inv. Mgmt., LLC*, 2006 UT App 331, ¶ 42, 153 P.3d 714 (noting that "costs" include "filing fees, service of the complaint, jury and witness fees, deposition transcripts, and copy costs for trial exhibits," but that "[t]here is a distinction to be understood between the legitimate and taxable 'costs' and other 'expenses,' of

---

3. We acknowledge that *World Peace Movement of America v. Newspaper Agency Corp.*, 879 P.2d 253 (Utah 1994), interpreted a statute rather than a contract. But whether interpreting a statute or a contract, we start with a plain language analysis. *Compare id.* at 259 ("When faced with a question of statutory construction, we look first to the plain language of the statute." (quotation simplified)), *with Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, ¶ 44, 201 P.3d 966 ("Under basic rules of contract interpretation, courts first look to the writing alone to determine its meaning and the intent of the contracting parties."). In light of this, we see no basis for viewing the potential importance of the word "all" to such an interpretation any differently based on that distinction.

litigation which may be ever so necessary, but are not properly taxable as costs" (quotation simplified)); *Redevelopment Agency of Salt Lake City v. Daskalas*, 785 P.2d 1112, 1123–24 (Utah Ct. App. 1989) (noting that statutory language referring to "all reasonable and necessary expenses" is "far more inclusive than the term 'costs'"); *cf. Christensen v. Christensen*, 2018 UT App 53, ¶ 13 n.4, 420 P.3d 106 (listing "attorney fees" and "costs" separately (quotation simplified)).

¶26    Even so, the term "expense" doesn't carry this same potentially narrow baggage. In its ordinary usage, the term "expense" commonly refers to a "financial burden or outlay" or "something expended to secure a benefit or bring about a result." *Expense*, Merriam-Webster.[4] As a result, the inclusion of the term "expense" in the Fee Provision at least arguably expands the universe of things that Vierig was obligated to cover. And Utah case law has suggested as much. *See, e.g.*, *World Peace Movement*, 879 P.2d at 260 (suggesting that the expense of hiring an attorney to defend an action "certainly falls into" the statutory phrase "actual and necessary expenses"); *Davidson v. Munsey*, 80 P. 743, 744 (Utah 1905) (comparing the term "costs," which has a "defined and well-understood meaning," with the term "expenses," which "is not so restricted, and may include[] items of expenditure in the prosecution of an action or proceeding," including "a reasonable attorney's fee").

¶27    Beyond this, Therriault points to the parenthetical. As noted, the Fee Provision states that Vierig must pay Therriault's "costs and expenses of collection (*including* Trustee's and attorney's fees in event of default in payment of the indebtedness secured hereby)." (Emphasis added.) The district court and Vierig both view this parenthetical as a limitation—i.e., one that restricts the recoverable fees to those stemming directly from a default. But in our view, the word "including" arguably (if not persuasively) suggests otherwise. The word "including" naturally means "to

---

4. https://www.merriam-webster.com/dictionary/expense [https://perma.cc/59N5-LZEU].

take in or comprise as *a part of* a whole or group." *Include*, Merriam-Webster[5] (emphasis added). In legal contexts, "including" is "routinely construed as introducing a non-exclusive, exemplary list," which "is of course the obvious, ordinary sense of the word." *Graves v. North E. Services, Inc.*, 2015 UT 28, ¶ 53, 345 P.3d 619.[6] Applied here, this meaning suggests that the items in the parenthetical are *not* meant to be exclusive. Thus, given that this parenthetical was attached to the phrase "all costs and expenses of collection," the natural implication of this parenthetical is that there are some situations *aside from default* in which Therriault would still incur "costs and expenses of collection." And in such situations, the Fee Provision obligates Vierig to pay these costs and expenses.

¶28 What would such a situation look like? One situation would be this one: if Vierig preemptively sought to invalidate the debt as a means of preventing Therriault from collecting on it, any costs or expenses that Therriault incurred while defending the debt's validity could arguably be seen as a component of the collection efforts themselves.

¶29 Of note, a number of courts have agreed with this approach when considering "costs of collection" fee provisions. The Eighth Circuit's decision in *Duryea v. Third Northwestern National Bank of Minneapolis*, 606 F.2d 823 (8th Cir. 1979), is illustrative. There, a bank sued a man (Duryea) in state court to collect on a loan that was secured by a promissory note. *Id.* at 824. Duryea then sued the bank in federal court, arguing that the loan violated federal law. *Id.* In the federal suit, the bank counterclaimed for the loan

---

5. https://www.merriam-webster.com/dictionary/including [https://perma.cc/PYN6-SMSL].

6. We note that *Graves v. North Eastern Services, Inc.*, 2015 UT 28, ¶ 53, 345 P.3d 619, analyzed the word "including" in a statutory context, as opposed to a contractual analysis like the one at issue here. As indicated above in footnote 3, however, we regard this distinction as being irrelevant to the question before us.

amount plus costs of collection, including attorney fees. *Id.* The federal district court rejected Duryea's claims, sided with the bank on its counterclaim, and then awarded the bank its attorney fees. *Id.* On appeal, Duryea argued that the bank was only entitled to the attorney fees it incurred while prosecuting its counterclaim, reasoning that those were the only costs that it "directly incurred in collecting the note." *Id.* at 826. But the Eighth Circuit disagreed, concluding that because it was "necessary" for the bank to defend against Duryea's attack on the debt "in order to collect on the note," the attorney fees that it "incurred in defending against" Duryea's suit were properly regarded as "a 'cost of collection' as that term is used in the note." *Id.* (quotation simplified).

¶30      Other courts have reached this same conclusion in similar cases. *See, e.g.,* *Jaeger v. Canadian Bank of Com.*, 327 F.2d 743, 746 (9th Cir. 1964) (upholding an award that included fees attributable to a creditor's defense against a debtor's counterclaim because the party had "to dispose of the counter-claim in order to secure judgment on its note"); *Finalco, Inc. v. Roosevelt*, 3 Cal. Rptr. 2d 865, 869 (Cal. Ct. App. 1991) ("California law is settled that a borrower's obligation to pay attorneys' fees incurred in the collection of the note includes attorneys' fees incurred in defending against a challenge to the underlying validity of the obligation."); *Casey v. Cohan*, 740 So. 2d 59, 63 (Fla. Dist. Ct. App. 1999) (concluding that attorney fees incurred defending against a recission counterclaim were a "cost of collection," reasoning that to "collect on the note," the debtor "had to defeat the counterclaim"); *Covich v. Chambers*, 397 N.E.2d 1115, 1123 (Mass. App. Ct. 1979) (holding that "fees attributable to the defense of the rescission and cancellation actions were properly awarded under the terms of the note because the successful resistance of these claims was intrinsic to establishing a default on the note as a predicate for its collection"); *Williamson v. Tucker*, 615 S.W.2d 881, 892 (Tex. Civ. App. 1981) (holding that fees attributable to a rescission-based counterclaim were compensable because, if the creditor had not successfully challenged the attempt to rescind, he "would have lost his right to collect the note"); *Wright v. Doolin*, 607 A.2d 1137, 1140 (Vt. 1992) (upholding an award of attorney

fees stemming from a counterclaim because "[d]efending against the counterclaim was necessary in order to collect the debt owed").

¶31    We acknowledge that many (though not all) of the above-cited cases involved the creditor's defense against a counterclaim by the debtor—i.e., situations in which the creditor initially filed suit to collect on the debt, but the debtor then filed a counterclaim seeking to invalidate the debt. And that's of course different from what happened here, where it was Vierig who filed his declaratory judgment and quiet title suit in the first instance. But while Vierig suggests that this sequencing matters, this is at least arguably the proverbial distinction without a difference. Consider the two scenarios back-to-back:

- Scenario A: The creditor sues to collect on the debt. In response to that suit, the debtor files a counterclaim seeking to invalidate the debt, thus forcing the creditor to defend against that claim to collect on the debt.

- Scenario B: The debtor first sues for a judicial declaration that the debt is invalid, thus forcing the creditor to defend against that claim to ever collect on the debt. After the debtor's suit is filed, the creditor sues to collect on the debt.

¶32    In Scenario A, the debtor's claim about the validity of the debt is reactive; in Scenario B, the debtor's claim about the validity of the debt is preemptive. But in both scenarios, the debtor's efforts are directed at the same end: preventing the creditor from collecting on the debt. And in both scenarios, the creditor has no choice but to defend against the claim for the same reason: to preserve the creditor's right to "collect on the note." *Duryea*, 606 F.2d at 826 (quotation simplified). If the creditor's ability to receive attorney fees for these efforts turned on who filed the first suit, parties could "coerce settlement" by "winning the 'race to the courthouse,'" thereby "rendering the 'cost of collection' provision

of little value, apparently contrary to what the parties to the note intended." *Id.* (quotation simplified).

¶33 The basic point of Therriault's position is this: because a creditor cannot collect on an invalid debt, a creditor's response to the debtor's attempt to invalidate a debt is "inextricably intertwined" with any effort to collect on it. *Finalco*, 3 Cal. Rptr. 2d at 869. Here, for example, if and when Therriault does collect on the debt—which, under the unchallenged summary judgment ruling she received on Vierig's suit, she'll be entitled to do when Vierig either sells the property, refinances it, or dies—there will be a direct through-line connecting this very litigation to her recovery of owed money, because the latter could not have occurred without the former. Because of this, the Fee Provision can reasonably be interpreted to allow Therriault to recover those attorney fees.

\* \* \*

¶34 This brings us back to where we started. Again, "where a contractual term or provision is ambiguous as to what the parties intended, the question becomes a question of fact to be determined by the fact-finder." *Brady*, 2019 UT 16, ¶ 53. And a provision is ambiguous if both sides present reasonable interpretations that favor their positions. *Id.* ¶ 54. With respect to the potential applicability of the Fee Provision to the fees Therriault incurred while defending the validity of the debt, both sides have indeed advanced reasonable interpretations, so we accordingly remand for the district court to determine the parties' intent in the first instance. *See, e.g.*, *Noel v. James*, 2022 UT App 33, ¶ 13, 507 P.3d 832 ("When confronted with questions of fact, this court will only rule as a matter of law if the evidence is so clear and persuasive that all reasonable minds would find one way. Otherwise, remand is appropriate to allow the district court to make that determination." (quotation simplified)).

C.     Fees Incurred Prosecuting the Counterclaim

¶35    As noted, Therriault also asked for fees that she incurred while prosecuting her counterclaim, but the district court denied that request. On appeal, Therriault claims that those are also recoverable as "costs and expenses of collection" because she "substantially prevailed on her counterclaim." In her view, she substantially prevailed on the counterclaim because the counterclaim was "necessary to respond" to Vierig's "attempt to set aside the Trust Deed" and recognize "its validity and the underlying debt."

¶36    But we disagree with Therriault's assertion that she "substantially prevailed on her counterclaim." In his own initial suit, Vierig asserted that "[n]o Promissory Note was ever executed, and no debt is owed to" her. Based on this assertion, Vierig asked the court to invalidate the Trust Deed. Because of this, it wasn't at all "necessary" for Therriault to file a counterclaim in order to argue that the debt or the Trust Deed were valid. Rather, any such arguments were already a necessary part of any defense to Vierig's suit.

¶37    What Therriault added to the litigation in the counterclaim was her assertion that Vierig had allegedly "repudiated the debt" by filing his suit, as well as her claims that she was accordingly entitled to (1) "an order from this Court providing that the Debt is due and owing" and (2) an order "providing that the Property be sold." But in its ruling following Therriault's request for clarification, the district court squarely rejected these claims, concluding that Vierig "has not repudiated [the debt] by asking the Court to interpret the document" and that "the Trust Deed is NOT due until the Property is sold or [Vierig] dies." As noted, Therriault has not appealed that decision.

¶38    We held above that the Fee Provision can reasonably be construed to allow Therriault to recover the attorney fees she incurred defending the validity of the debt and the Trust Deed. Again, this is so because there's at least plausibly a direct line

between that effort and any future collection on the debt. But this is not so with respect to the fees Therriault incurred prosecuting her counterclaim. The only result of that litigation was the court's rejection of her attempt to prematurely collect on the debt. Because that attempt failed, it will not directly lead to the collection of any money that she's owed. And because of this, we see no plausible interpretation of the Fee Provision under which Therriault would be entitled to the fees she incurred in that failed effort. We accordingly affirm the district court's rejection of that request.

CONCLUSION

¶39    We reverse the district court's rejection of Therriault's request for attorney fees relating to the litigation over the validity of the debt and the Trust Deed. Because both parties have advanced a reasonable interpretation of the Fee Provision as it relates to those fees, its applicability to them presents a fact question that should be decided by the district court after receiving evidence of the parties' intent. But we affirm the district court's rejection of Therriault's request for attorney fees incurred prosecuting her counterclaim. With respect to those fees, we see no basis under the Fee Provision for awarding Therriault fees that she incurred in that failed effort.

¶40    We accordingly remand to the district court for further proceedings consistent with this opinion.[7]

———————

7. In addition to arguing that she's entitled to the attorney fees she incurred below, Therriault requests the attorney fees she incurred on appeal. In Therriault's view, when "attorney fees are recoverable, a party is also entitled to recover the fees incurred in establishing the right to fees." As discussed above, however, we haven't concluded that Therriault has "the right to fees." Rather, we've remanded for further factual development and then a

(continued…)

ON PETITION FOR REHEARING

¶41 After we issued the above opinion, Vierig filed a petition for rehearing. There, he argued that we should not have reached the question of whether the Fee Provision was ambiguous because (A) Therriault did not preserve an ambiguity argument below and (B) Therriault did not argue ambiguity in her briefing on appeal. We called for a response. Having considered the arguments of the parties on these questions, we decline to disturb our original opinion.

A. Preservation

¶42 Vierig first claims that Therriault did not preserve an argument that the Fee Provision was ambiguous. While we acknowledge the potential complexity of this issue, we nevertheless conclude that Therriault's arguments were sufficient to preserve an ambiguity argument.

---

decision by the district court, and we've done so on only some (but not all) of the fees that Therriault has requested.

Moreover, in support of her request for appellate fees, Therriault cites *Express Recovery Services Inc. v. Olson*, 2017 UT App 71, ¶ 20, 397 P.3d 792, and *Brown v. David K. Richards & Co.*, 1999 UT App 109, ¶ 29, 978 P.2d 470. But the cited cases and passages all turn on whether the party prevailed on appeal. Therriault has not argued or provided any authority establishing that she would still be deemed the prevailing party on appeal if we remand for further fact-finding and decision on just some of her requested fees. Without adequate briefing on this front, we have no basis for concluding that Therriault is the prevailing party on appeal. We accordingly decline her request for appellate fees. *See* Utah R. App. P. 24(a)(9) (requiring a party requesting attorney fees on appeal to "state the request explicitly and set forth the legal basis for an award"); *cf. Gore v. Grant*, 2015 UT App 113, ¶ 32, 349 P.3d 779.

¶43    "When a party fails to raise and argue an issue in the trial court, it has failed to preserve the issue, and an appellate court will not typically reach that issue absent a valid exception to preservation." *State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443. "An issue is preserved by presenting it to the trial court in such a way that the trial court has an opportunity to rule on that issue." *Fort Pierce Indus. Park Phases II, III, & IV Owners Ass'n v. Shakespeare*, 2016 UT 28, ¶ 13, 379 P.3d 1218 (quotation simplified).

¶44    Of note, "[*i*]*ssues* must be preserved, not arguments for or against a particular ruling on an issue raised below." *Gressman v. State*, 2013 UT 63, ¶ 45, 323 P.3d 998 (emphasis in original). By contrast, "new *arguments*, when brought under a properly preserved issue or theory, do not require an exception to preservation." *True v. Utah Dep't of Transp.*, 2018 UT App 86, ¶ 32, 427 P.3d 338 (emphasis in original, quotation otherwise simplified). Though it's sometimes perhaps a touch opaque, the conceptual dividing line here is "between new 'issues' (like distinct claims or legal theories) and new 'arguments' in support of preserved issues (such as the citation of new legal authority)." *Hand v. State*, 2020 UT 8, ¶ 6, 459 P.3d 1014; *see also True*, 2018 UT App 86, ¶ 42 (referring to an issue as an assertion that is "based upon an entirely different analytical framework").

¶45    In the proceedings below, Vierig and Therriault each presented the district court with a competing interpretation of the Fee Provision, and each side's proposed interpretation largely tracked the version we recounted above in our original opinion. In his rehearing petition, Vierig focuses on the fact that Therriault did not then argue that the Fee Provision was ambiguous, but that she only asked the district court to conclude that she was entitled to relief as a matter of law. And for his part, Vierig proceeded similarly. Like Therriault, Vierig didn't argue that the provision was ambiguous; rather, Vierig asked the court to accept his interpretation as a matter of law. As discussed above in our opinion, the district court sided with Vierig, ruling that Therriault was not entitled to fees under the Fee Provision, and it did so without taking any evidence of the parties' intent.

¶46 For purposes of Vierig's argument about preservation, then, the question is this: did Therriault's assertion that she was entitled to her attorney fees under the Fee Provision also "present[]" an ambiguity argument to the district court and give the court the "opportunity to rule" on the issue of whether the provision was ambiguous? *Fort Pierce*, 2016 UT 28, ¶ 13 (quotation simplified). We think it did.

¶47 A provision "is ambiguous if it is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." *Brady v. Park*, 2019 UT 16, ¶ 54, 445 P.3d 395 (quotation simplified). A "reasonable interpretation is an interpretation that cannot be ruled out, after considering the natural meaning of the words in the contract provision in context of the contract as a whole, as one the parties could have reasonably intended." *Id.* ¶ 55. As we recognized above, it is settled in Utah that if "both sides advance interpretations of [a contract] that are plausible and reasonably supported by the document's language, then the document is ambiguous, even if *neither party actually uses that label* to describe the document." *Ocean 18 LLC v. Overage Refund Specialists LLC* (*In re Excess Proceeds from Foreclosure of 1107 Snowberry St.*), 2020 UT App 54, ¶ 25, 474 P.3d 481 (emphasis added).

¶48 Our decision in *Ocean 18* largely answers the preservation question raised by Vierig in his rehearing petition. There, Ocean 18 appealed a district court's determination that it had no interest in a trust deed. *Id.* ¶ 17. In recounting the procedural history of the case, we first noted that the district court had not taken any evidence or made any factual findings on the question of how to interpret the trust deed, but that the court had instead ruled on the basis of the parties' briefing and arguments alone. *Id.* Although "neither the parties nor the court framed it this way," we concluded that by doing so, the district court had "in essence . . . made a summary judgment ruling in which it determined, as a matter of law and undisputed fact, that Ocean 18 had no interest in" the trust deed. *Id.* (quotation simplified). We accordingly reviewed Ocean 18's challenge to that ruling under the

"well-settled" standard of review for summary judgment: correctness. *Id.*

¶49    Turning to the question of how to interpret the trust deed, we noted that "one of the first questions a court must consider in interpreting a contract is whether the contract is ambiguous." *Id.* ¶ 23. Describing the proceedings below, we noted that the parties had "advance[d] differing positions" as to the trust deed's "clarity," presenting the district court with "diametrically opposed interpretations" of it and the "associated documents." *Id.* ¶ 24. We then noted that "neither side expressly argued" to the district court that the trust deed was "ambiguous," nor did either side use "any variant of the word 'ambiguous'" in its appellate briefing. *Id.* But we nevertheless concluded that the trust deed was ambiguous. On this, we noted that "[p]arties do not need to use the word 'ambiguous' in order for a court to determine that a document is indeed ambiguous." *Id.* ¶ 25. And because "both sides" in the case had "espouse[d] interpretations" of the trust deed that were "plausible and reasonably supported by its language," we concluded that it was ambiguous, even though "neither party actually use[d] that label to describe the document." *Id.* We stressed that this is "indeed . . . the very definition of contractual ambiguity." *Id.* (quotation simplified).

¶50    In *Lane Myers Construction, LLC v. National City Bank*, 2014 UT 58, 342 P.3d 749, a plurality of our supreme court proceeded similarly. There, the plurality considered whether a district court had properly dismissed claims "as a matter of law" based on the "face" of written agreements. *Id.* ¶ 29 (plurality opinion). Of note, both parties had moved for summary judgment and, "in so moving, asserted *a lack of ambiguity*" and "a right to judgment in their favor as a matter of law." *Id.* ¶ 36 (emphasis added). But even so, the plurality saw "nothing in the parties' arguments in the district court that foreclose[d] a remand for further proceedings" if the supreme court concluded that the agreements were instead ambiguous. *Id.* The plurality emphasized that a "party's mere contention that there are no issues of material fact—a contention made every time a party moves for summary judgment—is beside

the point." *Id.* (emphasis omitted). Instead, it concluded that a court "*must make* [*its*] *own independent assessment*," and if, on that independent assessment, a court finds "ambiguity," it must then "also determine that summary judgment was not called for, and that further proceedings are necessary." *Id.* ¶ 37 (emphasis added).[8]

¶51    The question posed by Vierig's rehearing petition, then, is how such cases fit with the preservation rule. The answer is that when a party asserts that it is entitled to relief under a contractual provision as a matter of law, that assertion necessarily has built into it (and thus preserves) the underlying assertion that the party's proposed interpretation is, at minimum, "plausible and reasonably supported by the document's language." *Ocean 18*, 2020 UT App 54, ¶ 25. After all, the party couldn't be entitled to relief if its interpretation were implausible and unreasonable. By asking the court to adopt its interpretation of the contract, the party is thereby also giving the court the opportunity to rule that the contract is ambiguous if the court considers the other side's proposed interpretation and concludes that it is plausible and reasonable too.

¶52    Put differently, if one side proposes Interpretation A and the other side proposes Interpretation B, the court does not have

---

8. The plurality opinion discussed above was authored by Justice Lee and joined by Justice Parrish. Chief Justice Durrant concurred in the result but differed as to the underlying legal elements of the claim at issue. *See Lane Myers Constr., LLC v. National City Bank*, 2014 UT 58, ¶¶ 39–47, 342 P.3d 749 (Durrant, C.J., concurring). But despite his disagreement about the case's proper legal contours, Chief Justice Durrant still agreed that under either the plurality's legal approach or his, "it is clear that there are factual issues that preclude summary judgment." *Id.* ¶ 47. Thus, even though both parties had "asserted a lack of ambiguity," *id.* ¶ 36 (plurality opinion), three justices of the supreme court still concluded that the documents were ambiguous and that the case should be remanded as a result.

to consider any "distinct claim[] or legal theor[y]," *Hand*, 2020 UT 8, ¶ 6, to conclude that the provision is ambiguous. Rather, if the court concludes that Interpretations A and B are both plausible and reasonable, the contractual term is ambiguous. Again, this is the "very definition of contractual ambiguity," *Ocean 18*, 2020 UT App 54, ¶ 25. And of note, the court would reach that ambiguity conclusion based on the exact claims and legal theories that were just presented to it by the parties themselves.

¶53    So here, it's true that Therriault didn't argue below that the Fee Provision was ambiguous. But she did argue that she was affirmatively entitled to fees under the Fee Provision, and as we've set forth above, we think that argument was plausible and reasonable. By making that argument, Therriault presented the court with the issue of whether she was entitled to fees under the Fee Provision, and she likewise gave the court the opportunity to conclude that, even if she wasn't entitled to judgment as a matter of law, Vierig wasn't either. But if the court concluded that neither party was entitled to judgment as a matter of law, the only permissible outcome would be further consideration of the question in light of extrinsic evidence of what the parties intended.

¶54    Because of all this, we conclude that the issue of whether Therriault is entitled to fees under the Fee Provision was preserved, and that because it was, the district court also had the opportunity to rule on the issue of whether the Fee Provision was ambiguous. The ambiguity argument was therefore sufficiently preserved to allow us to reach it on appeal.[9]

---

9. In his rehearing petition, Vierig argues that our recent decision in *Larson v. Stauffer*, 2022 UT App 108, 518 P.3d 175, establishes that an ambiguity argument must be preserved. We read *Larson* differently. There, two neighbors (the Larsons and the Stauffers) had a disagreement about the placement of the Larsons' backyard shed. *Id.* ¶ 2. After some period of dispute, the parties agreed to a

(continued…)

settlement that required the Larsons to move the shed "within six months." *Id.* ¶ 5 (quotation simplified). In a subsequent lawsuit, the Stauffers claimed that the Larsons had breached this provision by not moving the shed "within six months of signing" the settlement. *Id.* ¶ 10 (quotation simplified). In response, the Larsons claimed that the settlement was "ambiguous regarding the date the shed had to be removed." *Id.* ¶ 11. But the district court agreed with the Stauffers, concluding that the settlement "unambiguously required the Larsons to have removed the shed within six months of signing." *Id.* ¶ 14 (quotation simplified).

On appeal, we considered whether the Larsons' failure to timely move the shed constituted a failure to "substantially perform[]" under the settlement. *Id.* ¶¶ 21–28. In a footnote to that discussion, we pointed out that the Larsons had separately argued on appeal that it was "at least ambiguous whether the six-month deadline began to run from the date of signing versus the date the Stauffers moved their fence 'to facilitate the necessary modifications' to the shed." *Id.* ¶ 21 n.3. But we then stated that "the Larsons did not make this argument in the district court, so it [was] unpreserved." *Id.*

In Vierig's view, this passage stands for the proposition that an ambiguity argument itself must be preserved. But it's unclear whether this is what *Larson* actually said. Again, in recounting the procedural history of the case, we made it clear that the Larsons had raised an ambiguity argument "regarding the date the shed had to be removed." *Id.* ¶ 11. Despite this, we nevertheless thought that there was something about this additional ambiguity argument that they had not preserved below. In this light, the thing that we identified as having been added on appeal was the assertion that the settlement was ambiguous because the six month period began running from "the date the Stauffers moved their fence," *id.* ¶ 21 n.3, an assertion about the proper starting point that had previously been unmentioned in our opinion.

Properly understood, *Larson* thus stands for the proposition that a party's proposed interpretation of a contract

(continued…)

B.    Therriault's Brief on Appeal

¶55    Vierig next argues that, preservation aside, we also shouldn't have reached the question of whether the Fee Provision was ambiguous because Therriault didn't argue ambiguity in her brief. We disagree with Vierig here too.

¶56    Vierig correctly points out that Therriault did not argue ambiguity in her brief. But she did argue that the "issue before this Court is whether the trial court erred in declining to award [Therriault] her attorney fees and costs," that the "trial court erred in concluding that the phrase 'all costs and expenses of collection' does not include [her] attorney fees and costs," and that the "fees and costs incurred in prosecuting [her] counterclaim also clearly fall within the scope of 'costs and expenses of collection.'" And in the Conclusion of her brief, she asked us to "reverse the trial court's refusal to award fees and costs and remand for a determination of [her] allowable fees and costs."

¶57    True, the reason Therriault gave us for "revers[ing] the trial court's refusal to award fees and costs" was that she thought she was affirmatively entitled to relief herself. But by arguing that she

---

must be preserved below and that a party can't offer a new one for the first time on appeal. But this is decidedly not what happened here, where Therriault consistently argued below and on appeal that the Fee Provision covers the attorney fees she incurred while defending against Vierig's attempt to invalidate the debt and the Trust Deed.

    In any event, if it's true that our conclusion in this appeal is in tension with *Larson*, a contrary conclusion would be in tension with *Ocean 18* and *Lane Myers*. Faced with these two options, we conclude that the better rule is the one we've laid out above: when a party asks a court to affirmatively adopt its interpretation of a contract, this request preserves an argument that the contract should instead be regarded as ambiguous if the court concludes that the other party offers a plausible and reasonable interpretation too.

was entitled to relief under the Fee Provision, Therriault necessarily also argued that Vierig's contrary interpretation of it wasn't correct.

¶58    In our original opinion, we essentially gave Therriault half of what she was requesting. At her request, we reversed the district court's decision to interpret the Fee Provision in Vierig's favor as a matter of law; even so, however, we declined to also conclude that she was entitled to summary judgment herself. But our decision not to order summary judgment in Therriault's favor wasn't the result of anything that Therriault didn't argue. Rather, it was the result of something that Vierig did argue in response. Namely, in his brief, Vierig gave us a plausible and reasonable interpretation of his own. Once we saw the plausibility in both sides' positions, this compelled us to conclude that the Fee Provision was ambiguous based on the arguments that had been presented to us in the briefs. Again, this is the "very definition of contractual ambiguity." *Ocean 18*, 2020 UT App 54, ¶ 25.

¶59    Of note, we were confronted with a similar dynamic in *Beckman v. Cybertary Franchising LLC*, 2018 UT App 47, 424 P.3d 1016. There, both parties on appeal likewise contended that the document at issue was "unambiguous and must be read in support of their respective positions." *Id.* ¶ 76. Although both sides "advocate[d] different ways" to interpret the clause in question, we concluded that the "plain language does not obviously support either alternative." *Id.* ¶ 83. Because of that conclusion, we "remand[ed] this issue to the trial court to consider extrinsic evidence to determine its meaning." *Id.*

¶60    The same result is warranted here too. In her arguments below and again on appeal, Therriault raised the issue of whether she is entitled to her attorney fees under the Fee Provision. While Therriault hasn't persuaded us that her interpretation of that provision is correct as a matter of law, she has persuaded us that Vierig's interpretation isn't correct as a matter of law either. Because of that, the provision is by definition ambiguous, which is why we're reversing the district court's decision.

¶61    For these reasons, we decline to reverse our original opinion on either of the grounds identified by Vierig in his rehearing petition.

―――――――

ORME, Judge (concurring specially):

¶62    I concur fully in the lead opinion. I write separately to address a concern I know practitioners will have when they read paragraphs 15, 16, 34, and 39.

¶63    Experience suggests that it is not likely there will be a wealth of extrinsic evidence bearing on the parties' intent with respect to the provision in question. It is much more likely that boilerplate language was rather uncritically used. And if there is no relevant, admissible evidence of the parties' actual intent, the tie-breaker will come into play and the provision will be construed against the drafter. *See Gillmor v. Macey*, 2005 UT App 351, ¶ 38 n.16, 121 P.3d 57, *cert. denied*, 126 P.3d 772 (Utah 2005). Notwithstanding the likelihood of that scenario, realistically speaking, the parties must first have their opportunity to present whatever pertinent evidence they might have. This court cannot jump over that step and construe the provision against the drafter on the assumption, likely though it is, that there will be no admissible evidence bearing on the parties' intent in agreeing to this provision.

―――――――